**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

NEW BALANCE ATHLETICS, INC.,

                Plaintiff,

    v.

USA NEW BUNREN INTERNATIONAL
CO. LIMITED LLC,

                Defendant.

Civil Action No. 17-cv-01700-MN

Honorable Maryellen Noreika

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
T: (302) 757-7300
F: (302) 757-7299
Email: aconnolly@connollygallagher.com
Email: rnewell@connollygallagher.com

*Attorneys for Plaintiff New Balance*

Of Counsel:

Thomas L. Holt (*PHV*)
Jeremy L. Buxbaum (*PHV*)
Perkins Coie LLP
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603
T: (312) 324-8400
F: (312) 324-9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com

Dated: May 17, 2019

# TABLE OF CONTENTS

**Page**

I.     NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.    SUMMARY OF THE ARGUMENT ............................................................ 1

III.   FACTUAL BACKGROUND ................................................................... 4

     A.     New Balance and Its Iconic N Mark ..................................................... 4

     B.     New Bunren's Registration and Use of Its Counterfeit "N" Mark ....................... 6

IV.   ARGUMENT ................................................................................. 7

     A.     Legal Standard ........................................................................ 7

     B.     Threshold Showing for All Claims - New Balance Owns Valid and Protectable Trademarks. ................................................................ 8

     C.     Trademark Dilution - New Bunren Has Diluted New Balance's N Marks. .......... 9

         1.     New Balance's N Marks Are Famous. .................................................. 9

         2.     New Bunren Uses Its "N" Mark in Interstate Commerce. ...................... 11

         3.     New Bunren Began Using its "N" Mark after New Balance's N Marks Became Famous. ................................................................ 11

         4.     New Bunren's Use of its "N" Mark Causes Dilution. ............................. 11

     D.     Trademark Infringement - New Bunren Has Infringed New Balance's N Marks. .................................................................................. 15

         1.     New Bunren's Mark Is Virtually Identical to the N Marks and Is Used on Competing Footwear and Apparel Products. ............................ 16

         2.     The Remaining Lapp Factors Favor New Balance. ................................. 17

     E.     Trademark Counterfeiting - New Bunren's "N" Mark Is A Counterfeit. ............ 20

     F.     New Balance Is Entitled to an Injunction. ........................................... 21

     G.     New Balance Is Entitled to Statutory Damages. ..................................... 22

     H.     New Balance Is Entitled to Reasonable Attorneys' Fees and Costs. .................. 24

V.     CONCLUSION ............................................................................. 25

**Page(s)**

<small>**CASES**</small>

*7-Eleven, Inc. v. Upadhyaya*,
   926 F. Supp. 2d 614 (E.D. Pa. 2013) ........................................................................21

*AAMCO Transmissions, Inc. v. Dunlap*,
   646 F. App'x 182 (3d Cir. 2016) ..............................................................................21

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   149 F. Supp. 3d 1222 (D. Or. 2016) ...........................................................................9

*Adidas Am., Inc. v. Skechers USA, Inc.*,
   No. 3:15-cv-01741-HZ, 2017 WL 3319190 (D. Or. Aug. 3, 2017) ..........................18

*Adidas-Salomon AG v. Target Corp.*,
   228 F. Supp. 2d 1192 (D. Or. 2002) ...........................................................................9

*Alliance Bank v. New Century Bank*,
   742 F. Supp. 2d 532 (E.D. Pa. 2010) ........................................................................18

*Am. Bridal & Prom Indus. Ass'n, Inc. v. Jollyprom.com*,
   Civ. No. 17-2454, 2018 WL 1226106 (D.N.J. Mar. 9, 2018) .............................21, 22

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*,
   793 F.3d 313 (3d Cir. 2015) ......................................................................................18

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
   145 F. Supp. 3d 311 (D. Del. 2015) ..........................................................................21

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
   209 F. Supp. 3d 744 (D. Del. 2016) ..................................................................3, 8, 20

*AT&T Corp. v. ATT&T, Inc.*,
   No. Civ.A. 00-699-SLR, 2002 WL 31500934 (D. Del. Oct. 31, 2002) ......................8

*Audi AG v. Posh Clothing, LLC*,
   Civil Action No. 18-14254, 2019 WL 1951166 (D.N.J. May 2, 2019) .....................24

*Barnes Grp. Inc. v. Connell Ltd. P'ship*,
   793 F. Supp. 1277 (D. Del. 1992) .............................................................................12

*Cartier Int'l AG v. Daniel Markus, Inc.*,
   Civil Action No. 10-1459 (JLL), 2011 WL 3881498 (D.N.J. Sept. 2, 2011) ...........25

*Chanel, Inc. v. ENS Jewelry, Inc.*,
Civil Action No. 08-2005 (JAG), 2009 WL 1298406 (D.N.J. May 8, 2009) .........................25

*Chanel, Inc. v. Gordashevsky*,
558 F. Supp. 2d 532 (D.N.J. 2008) ...........................................................................................23

*Chanel, Inc. v. Guetae*,
Civil Action No. 07-3309 (JAG), 2009 WL 1653137 (D.N.J. June 8, 2009) ...................24, 25

*Chanel, Inc. v. Matos*,
133 F. Supp. 3d 678 (D.N.J. 2015) .....................................................................................22, 23

*Coach, Inc. v. Horizon Trading USA Inc.*,
908 F. Supp. 2d 426 (S.D.N.Y. 2012)........................................................................................20

*Coach, Inc. v. Sunfastic Tanning Resort*,
Civil Action No. 10-1626, 2011 WL 5447972 (E.D. Pa. Nov. 10, 2011) ...................................8

*Consol. Cigar Corp. v. Monte Cristi de Tobacos*,
58 F. Supp. 2d 188 (S.D.N.Y. 1999).........................................................................................20

*Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*,
778 F. Supp. 2d 726 (N.D. Tex. 2011) ....................................................................................14

*Dorsey v. Black Pearl Books, Inc.*,
Civil Action No. 06-2940(JAG), 2006 WL 3327874 (D.N.J. Nov. 14, 2006) .........................18

*E.A. Sween Co. v. Deli Express of Tenafly, LLC*,
19 F. Supp. 3d 560 (D.N.J. 2014) ................................................................................11, 19, 22

*Fair Wind Sailing, Inc. v. Dempster*,
764 F.3d 303 (3d Cir. 2014)......................................................................................................25

*Gucci Am., Inc. v. Action Activewear, Inc.*,
759 F. Supp. 1060 (S.D.N.Y. 1991)..........................................................................................18

*Hershey Co. v. Promotion in Motion, Inc.*,
No. 07-cv-1601 (SDW), 2013 WL 1257828 (D.N.J. Jan. 18, 2013) ..................................12, 13

*Holt's Co. v. Hoboken Cigars, LLC*,
Civ. No. 09-3782 (WJM), 2010 WL 4687843 (D.N.J. Nov. 10, 2010)....................................25

*Interpace Corp. v. Lapp, Inc.*,
721 F.2d 460 (3d Cir. 1983)...................................................................................15, 16, 17

*Jews for Jesus v. Brodsky*,
993 F. Supp. 282 (D.N.J. 1998) .........................................................................................10

*K-Swiss, Inc. v. USA AISIQI Shoes Inc.*,
291 F. Supp. 2d 1116 (C.D. Cal. 2003) .............................................................................18

*Kos Pharm., Inc. v. Andrx Corp.*,
369 F.3d 700 (3d Cir. 2004).............................................................................16, 18, 19, 22

*Lingo v. Lingo*,
785 F. Supp. 2d 443 (D. Del. 2011)............................................................................8, 15

*Lorillard Tobacco Co. v. Tropical Grocery Store*,
Civil No. 11-1420, 2012 WL 4867411 (D.N.J. Oct. 11, 2012) ...................................... passim

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
211 F. Supp. 2d 567 (E.D. Pa. 2002) ..........................................................................20, 23

*Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*,
507 F.3d 252 (4th Cir. 2007) .............................................................................................12

*M'Otto Enters., Inc. v. Redsand, Inc.*,
831 F. Supp. 1491 (W.D. Wash. 1993)...............................................................................18

*Microsoft Corp. v. Silberstein*,
Civil Action No. 06-3206 (HAA), 2009 WL 10690512 (D.N.J. Jan. 29, 2009)................23, 24

*Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*,
251 F. Supp. 3d 750 (D. Del. 2017)...............................................................15, 16, 17, 19

*Mobil Oil Corp. v. Pegasus Petroleum Corp.*,
818 F.2d 254 (2d Cir. 1987)...............................................................................................18

*Nike, Inc. v. Nikepal Int'l, Inc.*,
No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030 (E.D. Cal. Sept. 18, 2007) ......................10

*Pennzoil-Quaker State Co. v. Smith*,
No. 2:05cv1505, 2008 WL 4107159 (W.D. Pa. Sept. 2, 2008) .........................................12, 17

*Pocono Int'l Raceway, Inc. v. Pocono Mountain Speedway, Inc.*,
    171 F. Supp. 2d 427 (M.D. Pa. 2001) ...............................................................10, 14

*Quality Semiconductor, Inc. v. QLogic Corp.*,
    No. C-93 20971, 1994 WL 409483 (N.D. Cal. May 13, 1994) ...............................12

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
    No. 13cv3669 (DLC), 2014 WL 6850966 (S.D.N.Y. Dec. 4, 2014) .......................20

*Rockland Mortg. Corp. v. S'holders Funding, Inc.*,
    835 F. Supp. 182 (D. Del. 1993) ..................................................................12, 13, 17

*Rolex Watches U.S.A., Inc. v. Jones*,
    No. 99 CIV. 2359(DLC)(FM), 2002 WL 596354 (S.D.N.Y. Apr. 17, 2002) .........25

*Rolls-Royce Motor Cards Ltd. v. Davis*,
    Civ. No. 15-0417 (KM), 2016 WL 3913640 (D.N.J. Mar. 11, 2016) .....................12

*Sabinsa Corp. v. Creative Compounds, LLC*,
    609 F.3d 173 (3d Cir. 2010) ................................................................................ passim

*Sanofi-Aventis v. Advancis Pharm. Corp.*,
    453 F. Supp. 2d 834 (D. Del. 2006) ...........................................................3, 16, 21

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*,
    736 F.3d 198 (2d Cir. 2013) .....................................................................................14

*Tiffany, Inc. v. Luban*,
    282 F. Supp. 2d 123 (S.D.N.Y. 2003) ......................................................................25

*Times Mirror Magazine, Inc. v. Las Vegas Sports News, L.L.C.*,
    212 F.3d 157 (3d Cir. 2000) ...............................................................................2, 8, 9

*Universal City Studios, Inc. v. Ahmed*,
    No. CIV. A. 93-3266, 1994 WL 185622 (E.D. Pa. May 13, 1994) ........................24

*Visa Int'l Serv. Ass'n v. JSL Corp.*,
    610 F.3d 1088 (9th Cir. 2010) ..................................................................................14

**STATUTES**

6 Del. C. § 2532 .............................................................................................................15

**TABLE OF AUTHORITIES**
(continued)

15 U.S.C. § 1057(b) ...................................................................................................5

15 U.S.C. § 1065 ................................................................................................5, 8

15 U.S.C. § 1114(a) .................................................................................................15

15 U.S.C. § 1116(a) .................................................................................................21

15 U.S.C. § 1117(a) .................................................................................................25

15 U.S.C. § 1117(b) .................................................................................................25

15 U.S.C. § 1117(c) ........................................................................................3, 22, 25

15 U.S.C. § 1117(c)(2) .............................................................................................22

15 U.S.C. § 1125(a) .................................................................................................15

15 U.S.C. § 1125(c) .............................................................................................2, 9

15 U.S.C. § 1125(c)(1) .............................................................................................21

15 U.S.C. § 1125(c)(2)(A) ....................................................................................2, 9

15 U.S.C. § 1125(c)(2)(B) .............................................................................3, 11, 12

15 U.S.C. § 1127 ......................................................................................................20

RULES

Fed. R. Civ. P. 56 .....................................................................................................1

Fed. R. Civ. P. 56(a) .................................................................................................7

OTHER AUTHORITIES

4 McCarthy on Trademarks and Unfair Competition § 24:116 (5th ed. 2019) ...........................14

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Plaintiff New Balance Athletics, Inc. ("New Balance"), by its attorneys, hereby submits its Opening Brief in Support of its Motion for Partial Summary Judgement against Defendant USA New Bunren International Co. Limited LLC ("New Bunren"). Specifically, New Balance seeks summary judgment on its trademark infringement and related claims as to New Bunren's "N" mark, which is a blatant "knockoff" and counterfeit of New Balance's signature N Mark.[1]

## I.     NATURE AND STAGE OF THE PROCEEDINGS

New Balance filed its original Complaint against New Bunren alleging trademark infringement, trademark dilution, false designation of origin, and related Delaware state law claims on November 22, 2017 (D.I. 1). On May 11, 2018, New Balance filed its First Amended Complaint ("FAC"), retaining its original claims and adding a claim for fraud on the USPTO (D.I. 26). On March 18, 2019, the Court entered an Amended Scheduling Order requiring that opening briefs for case dispositive motions be filed on or before May 17, 2019 (D.I. 49). Per the Amended Scheduling Order, discovery closed on March 25, 2019 (*Id.*). A pretrial conference is set for October 15, 2019, and a 4-day jury trial is set to commence on October 21, 2019 (*Id.*).

## II.     SUMMARY OF THE ARGUMENT

1.     For over 40 years, New Balance has used its iconic slanted "N" logo on footwear and apparel, as depicted below. Statement of Uncontroverted Facts ("SOF") ¶¶ 1, 2.

  

---

[1] New Balance is not seeking summary judgment with regard to its unjust enrichment claim (Count VII in the Amended Complaint (D.I. 26)), its fraudulent registration claim (Count VIII in the Amended Complaint (D.I. 26)), or any of its claims relating to New Bunren's "NEW BUNREN" trademark.

2.      In a transparent attempt to ride on the coattails of New Balance's fame and to improperly trade on the goodwill that New Balance has worked so hard to build in its distinctive brand, New Bunren registered and used a virtually identical slanted "N" logo in connection with its footwear and apparel, as depicted below.  SOF ¶¶ 3, 30, 36, 37.



3.      New Balance now asks the Court to grant its motion for partial summary judgment on its trademark dilution, trademark infringement, trademark counterfeiting, and related state law claims.  To succeed on all of these claims, New Balance must show that it owns valid and protectable trademarks.  Because each of New Balance's marks at issue is federally registered and incontestable, New Balance meets this threshold showing for all claims.  *Lorillard Tobacco Co. v. Tropical Grocery Store*, Civil No. 11-1420 (RBK/AMD), 2012 WL 4867411, at *3 (D.N.J. Oct. 11, 2012) (citing *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)).

4.      New Balance is entitled to summary judgment on its trademark dilution claims because New Balance's N Marks are famous and New Bunren's virtually identical "N" mark will harm the ability of New Balance's N Marks to uniquely identify New Balance's products as coming from a single source.  15 U.S.C. § 1125(c); *Times Mirror Magazine, Inc. v. Las Vegas Sports News, L.L.C.*, 212 F.3d 157, 163 (3d Cir. 2000).  New Balance's N Marks are famous because New Balance has generated billions of dollars in sales worldwide under the marks, spent hundreds-of-millions of dollars advertising the N Marks, and the marks enjoy substantial brand recognition as evidenced by numerous brand surveys.  15 U.S.C. § 1125(c)(2)(A).  Moreover, New

Bunren's "N" mark is likely to dilute New Balance's famous N Marks because New Bunren's mark is virtually identical to New Balance's N Marks and will necessarily impair the source-identifying function of New Balance's N Marks. *Id.* § 1125(c)(2)(B).

5.      New Bunren is also liable for trademark infringement because consumers are likely to be confused between its "N" mark and New Balance's N Marks. *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 173, 183–89 (3d Cir. 2010). New Bunren uses virtually identical marks consisting of a slanted capital "N" on virtually identical footwear and apparel products, marketed to the exact same consumer base. In fact, the two marks are so confusingly similar that New Bunren's own corporate representative could not even tell the two apart when confronted with both side-by-side at her deposition.

6.      New Balance is also entitled to a determination as a matter of law that New Bunren's trademark infringement rises to the level of trademark counterfeiting. New Bunren used its "N" mark knowing that it was a counterfeit of the N Marks, or was at the very least willfully blind to such use. *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 755 (D. Del. 2016). New Bunren was aware of New Balance and its N Marks prior to "creating" its own "N" mark, purposefully selected a name that sounds similar to New Balance, and used a virtually identical mark on virtually identical products.

7.      As a consequence of this liability, New Balance is entitled to a variety of remedies. First, because New Balance will suffer irreparable harm in the form of lost goodwill and damage to its reputation, New Balance is entitled to a permanent injunction, preventing New Bunren from using its "N" mark in the future. *Sanofi-Aventis v. Advancis Pharm. Corp.*, 453 F. Supp. 2d 834, 857 (D. Del. 2006). Second, New Balance is entitled to recover at least $2 million in statutory damages because New Bunren willfully used a counterfeit "N" mark. 15 U.S.C. § 1117(c).

Moreover, New Bunren's willful conduct also entitles New Balance to recover its reasonable attorneys' fees and costs. *Id*. §§ 1117(a), (b).

III.    FACTUAL BACKGROUND

**A.    New Balance and Its Iconic N Mark**

New Balance was founded in 1906.  SOF ¶ 4.  Today, it is one of the largest shoe and athletic apparel manufacturers in the world, with over 4,000 employees and more than $4.5 billion in annual sales worldwide in 2018, approximately 30% of which was sold in the United States. SOF ¶ 5.  It is the only major company that manufactures athletic footwear in factories located within the United States.  SOF ¶ 6.  Since its earliest days, New Balance has focused on fit and authenticity as its core brand messaging.  SOF ¶ 7.  Owing to the quality of its products, New Balance has achieved significant brand loyalty among customers in the marketplace.  SOF ¶¶ 8, 24.  Indeed, New Balance consistently rates highly for customer loyalty and brand health in the athletic footwear and apparel categories as recognized by Brand Keys, an independent group that recognizes brands that are best able to engage consumers and create customer loyalty, and by other similar organizations.  SOF ¶ 8.  New Balance has designed and developed numerous well-recognized and even iconic shoe designs and models, and related apparel, and has sold hundreds of millions of pairs of shoes and clothing items worldwide, representing billions of dollars in sales annually.  SOF ¶¶ 5, 9, 16-21.

Since as early as January 1, 1974, New Balance has adopted and used in U.S. commerce, including in Delaware, a family of iconic trademarks featuring a slanted block letter "N" on its own or in combination with other elements, including a similarly stylized letter "B,"—displayed as "NB"—in connection with (among other things) footwear and apparel (collectively, the "N Marks").  SOF ¶ 1.

New Balance owns the following U.S. trademark registrations for the N Marks (among others) for use in connection with footwear, apparel, and/or related goods, all of which are valid and subsisting on the Principal Register of the U.S. Patent and Trademark Office ("USPTO"):

- 4 -

| Mark | Reg. No. | Reg. Date | First Use in U.S. Commerce |
|:---:|:---:|:---:|:---:|
| *N* | 3,282,106 | Aug. 21, 2007 | Jan. 2, 1977 (Class 25) |
| *N* | 4,477,442 | Feb. 4, 2014 | Jan. 1, 1996 (Class 25) |
| (shoe logo) | 1,308,133 | Dec. 4, 1984 | Jan. 2, 1977 (Class 25) |
| (shoe logo) | 1,344,589 | June 25, 1985 | Feb. 1, 1979 (Class 25) |
| *NB* | 1,065,726 | May 17, 1977 | Jan. 1, 1974 (Class 25) |
| *NB* | 1,260,939 | Dec. 13, 1983 | Jul. 1, 1977 (Class 18) Mar. 1, 1977 (Class 25) |
| *NB* | 3,427,255 | May 13, 2008 | Aug. 2, 2007 (Class 18) Aug. 2, 2007 (Class 25) |
| *NB* | 3,475,802 | Jul. 29, 2008 | Jan. 2, 2007 (Class 25) |

SOF ¶¶ 1, 11.  Pursuant to Section 7(b) of the Lanham Act, 15 U.S.C. § 1057(b), New Balance's federal registration certificates are *prima facie* evidence of the validity of the above marks as well as New Balance's ownership and exclusive right to use these marks in connection with the goods identified in these registrations.  SOF ¶¶ 1, 11.  All of the marks shown above have achieved incontestable status under Section 15 of the Lanham Act, 15 U.S.C. § 1065.  SOF ¶¶ 1, 11.

New Balance consistently and prominently uses and displays its N Marks in connection with the advertising, promotion, and sale of its goods and services.  SOF ¶ 12.  By 2010, New Balance had established a global presence, generating $1.8 billion in sales worldwide (approximately $540 million in the U.S. alone), employing over 4,000 associates, and selling products in more than 120 countries.  SOF ¶ 15.  During 2012 and 2013, New Balance generated over $5 billion in revenue worldwide, approximately $1.5 billion of which was generated in the

U.S. SOF ¶¶ 16-17. By 2014, New Balance had also established partnerships and sponsorships with household names and brands such as Dustin Pedroia, the star second baseman of the Boston Red Sox, Heidi Klum, a world-famous supermodel and a judge of the hit TV show "America's Got Talent," Emma Coburn, a 2012 Olympic Steeplechase Finalist and two-time U.S. National Champion, and the "Peanuts" comic strip. SOF ¶ 22. Since that time, New Balance has expanded its extensive portfolio of partnerships to include NBA superstar Kawhi Leonard, becoming the official footwear and apparel company of the MLB's New York Mets, and becoming the official football kit provider for the Liverpool Football Club, the Costa Rican men's and women's national teams, and the Panamanian men's and women's national teams. SOF ¶ 23. As a result of New Balance's extensive sales, advertising, and promotion of footwear, apparel, and other goods and services under the N Marks, and through widespread industry acceptance and recognition, the consuming public and the trade have come to recognize the N Marks as identifying a single source of high-quality products and services. SOF ¶¶ 12-24. The N Marks have become famous and are assets of incalculable value as a symbol of New Balance, its quality products and services, and its goodwill. SOF ¶¶ 10, 12-25.

**B.      New Bunren's Registration and Use of Its Counterfeit "N" Mark**

New Bunren registered as a Delaware limited liability company in 2012. SOF ¶ 26. Although no formal relationship exists, New Bunren is the U.S. affiliate of Qierte Corporation Ltd. ("Qierte") of China. SOF ¶ 27. Since 2016, New Balance has been engaged in trademark infringement litigation with Qierte in China in connection with Qierte's use of an "N" trademark that is confusingly similar to New Balance's N Marks. SOF ¶ 28. In April 2017, a court in China awarded New Balance $500,000 in damages after ruling that a New Bunren "N" trademark, equivalent to those it registered and uses in the U.S., infringed New Balance's rights in one of its equivalent N Marks that New Balance uses in China. SOF ¶ 29.

With the goal of marketing and selling New Bunren-branded footwear and apparel in the United States, New Bunren federally registered at Qierte's direction six trademarks—two for

"New Bunren" and four for a slanted block "N."  SOF ¶ 30.  Each of the applications for these trademarks was filed on an intent-to-use basis.  SOF ¶ 31.  Once the marks were allowed by the USPTO, New Bunren or its predecessor in interest (collectively "New Bunren") filed statements of use with the USPTO declaring under oath that New Bunren was using the applied-for mark in U.S. commerce in connection with all of the goods listed in the underlying application, including footwear and apparel.  SOF ¶ 32.

In 2014, New Bunren began displaying and marketing footwear and apparel products bearing a slanted block "N" mark on its website at www.new-bunren.com.  SOF ¶ 33.  New Bunren products bearing the slanted block "N" mark were marketed, advertised and/or offered for sale in the U.S. at www.new-bunren.com and www.taobao.com.  SOF ¶ 33.  In 2018, New Bunren's website was shut down.  SOF ¶ 33.  However, New Bunren products bearing the slanted block "N" mark were still for sale in the U.S. at www.taobao.com.  SOF ¶ 34.  New Bunren contends that it has sold no products in the U.S., but maintains that New Bunren products have nonetheless been marketed and made available for sale in the U.S.  SOF ¶¶ 33-35.

On January 26, 2016, New Balance filed Petitions for Cancellation of New Bunren's registrations for the "N" mark with the Trademark Trial and Appeal Board ("TTAB") of the USPTO.  SOF ¶ 40.  Because New Bunren had assigned its four "N" marks to Qierte, Qierte was also a party to the cancellation proceedings.  SOF ¶ 40.  On June 20, 2018, the TTAB entered judgment in favor of New Balance, and on July 3, 2018, the registrations for the two "New Bunren" marks and four "N" marks were cancelled.  SOF ¶ 41.  Nonetheless, New Bunren continued to market and offer for sale products under those marks.  SOF ¶¶ 33-34.

## IV.    ARGUMENT

### A.    Legal Standard

A party is entitled to summary judgment when the Court concludes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary judgment, the Court must view all the

underlying facts and make all reasonable inferences in the light most favorable to the non-moving party. *AT&T Corp. v. ATT&T, Inc.*, No. Civ.A. 00-699-SLR, 2002 WL 31500934, at *2 (D. Del. Oct. 31, 2002). A fact is "material" if a dispute over the fact "might affect the outcome of the suit under the governing law." *Coach, Inc. v. Sunfastic Tanning Resort*, Civil Action No. 10-1626, 2011 WL 5447972, at *3 (E.D. Pa. Nov. 10, 2011). And a dispute is "genuine" if, after reviewing all of the evidence, a reasonable jury could return a verdict for the non-moving party. *Id.*; *AT&T Corp.*, 2002 WL 31500934, at *2.

The moving party bears the initial burden of showing there is no material dispute of fact. *Id.* Once the moving party carries its initial burden, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *AT&T Corp.*, 2002 WL 31500934, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986)). The mere existence of some evidence in support of the non-moving party is insufficient to deny a summary judgment motion. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). Indeed, a genuine dispute of material fact "may not rest upon mere allegations, speculation, unsupported assertions or denials of [the] pleadings." *Coach*, 2011 WL 5447972, at *3.

## B.    Threshold Showing for All Claims - New Balance Owns Valid and Protectable Trademarks.

As a threshold matter, New Balance must prove that it owns valid and protectable trademarks to succeed on its trademark dilution, infringement, and counterfeiting claims. *Times Mirror Magazine*, 212 F.3d at 163 (dilution); *Lingo v. Lingo*, 785 F. Supp. 2d 443, 449 (D. Del. 2011) (infringement); *Astrazeneca*, 209 F. Supp. 3d at 755 (counterfeiting). If the marks at issue are both federally registered and incontestable, the plaintiff has proved ownership, validity, and legal protectability. *Lorillard Tobacco*, 2012 WL 4867411, at *3 (citing *Ford Motor*, 930 F.2d at 291). A mark is incontestable when, after it has been in continuous use for five years subsequent to the date of registration and is still in use in commerce, the registrant of the mark files, and the USPTO accepts, a declaration of incontestability. *Id.*; 15 U.S.C. § 1065.

Here, New Balance has continuously used the N Marks for five years since registration and continues to use them. SOF ¶¶ 1, 11, 12. New Balance has also filed, and the USPTO has accepted, declarations of incontestability for the N Marks. SOF ¶¶ 1, 11. New Balance thus owns valid and legally protected N Marks.

**C.  Trademark Dilution - New Bunren Has Diluted New Balance's N Marks.**

New Bunren has blatantly copied New Balance's iconic N Marks, thus impairing their ability to set apart New Balance's footwear and apparel products from the competition. To succeed on a claim for dilution of a federally registered trademark, New Balance must prove that (1) the N Marks qualify as famous in light of the totality of the factors listed in 15 U.S.C. § 1125(c)(2)(A); (2) New Bunren is using its "N" mark in interstate commerce; (3) New Bunren began using its "N" mark after New Balance's N Marks became famous; and (4) New Bunren's use of its "N" mark causes dilution by lessening the capacity of New Balance's N Marks to identify and distinguish its goods or services. *Times Mirror Magazine*, 212 F.3d at 163; 15 U.S.C. § 1125(c).

**1.  New Balance's N Marks Are Famous.**

New Balance's N Marks are famous—they are among a handful of marks for athletic footwear and apparel, along with the NIKE word mark and Adidas' three stripes, that are ubiquitous, highly recognizable, and associated with a single source by a large segment of the consuming public. New Balance's advertising, sales, and brand-loyalty metrics show that the N Marks have achieved this fame. To determine whether a mark is famous, courts consider four factors: (1) the duration, extent, and geographic reach of advertising and publicity of the mark; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark; (3) the extent of actual recognition of the mark; and (4) whether the mark is registered. 15 U.S.C. § 1125(c)(2)(A). Courts consistently recognize, for example, the fame of the Adidas three stripe mark and Nike's NIKE word mark in light of their substantial sums spent on advertising and promoting their brand and marks, longstanding use of the marks, enormous sales volume nationwide, and recognition by various publications and brand surveys for brand strength. *See*

*Adidas Am., Inc. v. Skechers USA, Inc.*, 149 F. Supp. 3d 1222, 1247 (D. Or. 2016); *Adidas-Salomon AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1216–17 (D. Or. 2002); *Nike, Inc. v. Nikepal Int'l, Inc.*, No. 2:05-cv-1468-GEB-JFM, 2007 WL 2782030, at *5–6 (E.D. Cal. Sept. 18, 2007).

New Balance's N Marks are likewise famous. From 2012 to 2017, New Balance spent an average of approximately $75 million annually on global marketing expenditures, the vast majority of which was directed to the U.S. market. SOF ¶ 13. In 2018 alone, New Balance spent approximately $94 million on global marketing expenditures, again, the vast majority of which was directed to the U.S. market. SOF ¶ 13. This marketing covers print media, television, radio, online, social media, and point of sale and reaches audiences nationwide. SOF ¶ 12, 13. Moreover, third-party retailers consistently advertise New Balance products through prominent use of the N Marks. SOF ¶ 14. New Balance also has an established social media presence, totaling over 10 million followers between its Facebook, Twitter, and Instagram accounts. SOF ¶ 12.

New Balance's sales are also extensive. From 2012 to 2017, New Balance generated over $20 billion in revenue worldwide ($6 billion in the U.S.), and sold hundreds of millions of pairs of shoes, articles of apparel, and other merchandise bearing the N Marks, reaching consumers in all fifty states and around the world. SOF ¶¶ 5, 10, 16-21. In 2018 alone, New Balanced earned over $4.5 billion gross revenue worldwide. SOF ¶ 5. New Balance also enjoys strong brand recognition for its N Marks, consistently rating highly for customer loyalty and brand health in the athletic footwear and apparel categories as recognized by Brand Keys, an independent group that recognizes brands that are best able to engage consumers and create customer loyalty, and by other similar organizations. SOF ¶ 8. Finally, all of New Balance's N Marks are federally registered and incontestable. SOF ¶¶ 1, 11. In light of these undisputed facts, New Balance's N Marks are famous as a matter of law. *See Pocono Int'l Raceway, Inc. v. Pocono Mountain Speedway, Inc.*, 171 F. Supp. 2d 427, 444 (M.D. Pa. 2001) (holding that "Pocono" and "Pocono Raceway" marks were famous in light of acquired secondary meaning, longstanding use, extensive national advertising in several mediums, and their registration); *Jews for Jesus v. Brodsky*, 993 F. Supp. 282, 306 (D.N.J. 1998) (holding that "Jews for Jesus" marks were famous because they had been

used for 24 years, the organization had expended considerable sums on advertising, and media coverage of the organization was extensive).

###   2.   New Bunren Uses Its "N" Mark in Interstate Commerce.

"[T]he quantum of commercial activity needed to demonstrate interstate commerce is not great."  *E.A. Sween Co. v. Deli Express of Tenafly, LLC*, 19 F. Supp. 3d 560, 574 (D.N.J. 2014). Since 2014, New Bunren has displayed and marketed products bearing a virtually identical block capital "N" mark on its website at www.new-bunren.com and at www.taobao.com.  SOF ¶¶ 33-34.  These products were available and offered for sale in the U.S.  SOF ¶¶ 33-34.  Thus, New Bunren has used its "N" mark in interstate commerce.

###   3.   New Bunren Began Using its "N" Mark after New Balance's N Marks Became Famous.

Since as early as 1974, New Balance has used its family of N Marks in connection with its footwear and apparel products.  SOF ¶ 1.  New Balance's N Marks had certainly become famous by 2014 when New Bunren first used its virtually identical mark in commerce.  By 2014, New Balance was generating billions of dollars in revenue annually, reached consumers in over 120 countries, and had entered into numerous partnerships and sponsorship agreements with world-famous personalities.  SOF ¶¶ 13, 15, 16-18, 22.

###   4.   New Bunren's Use of its "N" Mark Causes Dilution.

Because New Bunren's slanted block "N" mark is so similar to New Balance's N Marks and is used on virtually identical products, consumers will associate New Bunren's "N" mark with New Balance's N Marks and/or New Balance, thus weakening New Balance's N Marks' ability to signify a single source.  15 U.S.C. § 1125(c)(2)(B).  Dilution occurs when the defendant uses marks that are highly similar to the plaintiff's marks to promote and sell the same sort of products. *E.A. Sween*, 19 F. Supp. 3d at 574.  The Court may consider six factors to determine if New Bunren's marks dilute the famous N Marks:

> (1)  The degree of similarity between New Bunren's N mark and the N Marks;

> (2)  The degree of inherent or acquired distinctiveness of the N Marks;

(3) The extent to which New Balance is engaging in substantially exclusive use of the N Marks;

(4) The degree of recognition of the N Marks;

(5) Whether New Bunren intended to create an association with the N Marks;

(6) Any actual association between New Bunren's marks and the N Marks.

15 U.S.C. § 1125(c)(2)(B).

Each of these factors weigh in favor of New Balance. *First*, New Bunren cannot genuinely dispute that it markets its products using marks virtually identical to New Balance's N Marks. SOF ¶¶ 1-3, 30, 33-34. Both marks consist of a slanted block "N." And when placed on footwear, as pictured above, both parties' "N" marks are prominently placed in identical fashion on the outside middle of the shoe upper. *Id.*

*Second*, the N Marks are distinctive. "[D]istinctiveness refers to the ability of the famous mark uniquely to identify a single source and thus maintain its selling power." *Louis Vuitton Malletier S.A. v. Haute Diggity Dog, LLC*, 507 F.3d 252, 265 (4th Cir. 2007) (citing *N.Y. Stock Exchange v. N.Y. Hotel LLC*, 293 F.3d 550, 558 (2d Cir. 2002)). Courts evaluate this factor similarly to the strength of the mark factor in trademark infringement claims. *See, e.g.*, *Rolls-Royce Motor Cards Ltd. v. Davis*, Civ. No. 15-0417 (KM), 2016 WL 3913640, at *7 (D.N.J. Mar. 11, 2016); *Hershey Co. v. Promotion in Motion, Inc.*, No. 07-cv-1601 (SDW), 2013 WL 1257828, at *24 (D.N.J. Jan. 18, 2013).

The N Marks are extremely strong. The N Marks are presumptively strong because they have achieved incontestable status. *Barnes Grp. Inc. v. Connell Ltd. P'ship*, 793 F. Supp. 1277, 1301 (D. Del. 1992); *Pennzoil-Quaker State Co. v. Smith*, No. 2:05cv1505, 2008 WL 4107159, at *12 (W.D. Pa. Sept. 2, 2008). In addition, the N Marks are inherently distinctive because they are arbitrary and do not describe, or even suggest, characteristics of the products they are associated with. *Rockland Mortg. Corp. v. S'holders Funding, Inc.*, 835 F. Supp. 182, 193 (D. Del. 1993); *Sabinsa*, 609 F.3d at 185; *Quality Semiconductor, Inc. v. QLogic Corp.*, No. C-93 20971, 1994 WL 409483, at *2 (N.D. Cal. May 13, 1994) (holding that a single letter stylized "Q" mark was

strong and entitled to a wide scope of protection).

**Third,** New Balance has engaged in substantially exclusive use of the N Marks by widespread advertising, as detailed above, and enforcing its rights against third parties. *Hershey*, 2013 WL 12157828, at *25. New Balance actively polices unauthorized use of its N Marks by maintaining an active enforcement program, which includes sending cease and desist letters, filing lawsuits in federal district court, and filing oppositions and cancellation petitions in the TTAB. SOF ¶ 39.

**Fourth,** the N Marks enjoy substantial marketplace recognition. As discussed above, the N Marks have achieved fame through extensive advertising and sales of products bearing the N Marks. *Rockland Mortg.*, 835 F. Supp. at 193 (holding that extensive advertising campaigns and substantial sales numbers evidence commercial strength).

**Fifth,** the undisputed facts show that New Bunren intended to create an association between its products and New Balance. New Bunren's scheme began by adopting the brand name, "New Bunren." It is no coincidence that each of the parties' brand names start with "New" and are followed by a two-syllable word beginning with the letter "B." In some instances, when pronounced in English "New Bunren" may sound confusingly similar to "New Balance." In fact, New Bunren's own corporate representative confused the pronunciations of the two terms at her deposition. SOF ¶ 43. In a further effort to associate itself with New Balance, the name "New Balance" actually appeared on the New Bunren webpage. SOF ¶ 44. Then New Bunren offered footwear and apparel products that were strikingly similar to New Balance's products. SOF ¶¶ 33, 36-37. New Bunren even advertised several of these products as "American Classics" on its website, further aligning itself with New Balance, a company that prides itself on manufacturing the majority of its products in America. SOF ¶¶ 6, 44. And to complete its illicit scheme, New Bunren strategically applied a nearly identical block "N" mark onto these identical products in a manner that renders the products virtually indistinguishable from those of New Balance. SOF ¶¶ 1-3, 30, 33-34, 42.

New Bunren cannot reasonably dispute that it was aware of New Balance's N Marks prior

to its adoption of its knock-off "N" mark in 2012. SOF ¶ 45. And even if it did not know of the N Marks when it began using them in 2014, New Bunren could no longer claim to bury its head in the sand by 2016 when New Balance initiated (and succeeded in) litigation in both China and the USPTO for infringement of the N Marks (or their foreign equivalents). SOF ¶¶ 28-29. New Bunren's decision to use its "N" mark can only be explained as a blatant attempt to seize on New Balance's goodwill.

**Sixth,** while evidence of actual association may be relevant to likelihood of association, such evidence is unnecessary. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 212–13 (2d Cir. 2013); *Cottonwood Fin. Ltd. v. Cash Store Fin. Servs., Inc.*, 778 F. Supp. 2d 726, 754–55 (N.D. Tex. 2011) ("As with a lack of actual confusion in likelihood of confusion analysis, however, this does not make association unlikely."). The term "association" in the realm of anti-dilution law means that when the ordinary person sees the junior mark, they will think of the senior user's famous mark. 4 McCarthy on Trademarks and Unfair Competition § 24:116 (5th ed. 2019). In this case, not only does seeing New Bunren's "N" mark make one think of New Balance's famous N Marks, but the association is so strong that the two marks are virtually indistinguishable—even to New Bunren's *own corporate representative*. In this case, Ms. Shy Fu Pao, when presented with New Bunren's "N" mark and New Balance's N Marks side-by-side, could not tell which mark belonged to her company, and which mark was New Balance's. SOF ¶ 42. If Ms. Pao cannot even distinguish between the two marks, consumers are certainly bound to associate the two. *See Pocono*, 171 F. Supp. 2d at 444 (holding that instances of actual confusion between the famous mark and the less-known mark are relevant to this factor).

Moreover, where a plaintiff's claim is particularly strong with respect to the other dilution factors, "a plaintiff seeking to establish likelihood of dilution is not required to go to the expense of producing expert testimony or market surveys" to show actual association. *Visa Int'l Serv. Ass'n v. JSL Corp.*, 610 F.3d 1088, 1091 (9th Cir. 2010). Here, the record clearly demonstrates that (i) the N Marks are strong and distinct, (ii) New Bunren's "N" mark is virtually identical to the N Marks, and (iii) New Bunren intended to associate itself with New Balance, and in fact did.

The likelihood of dilution is further bolstered by the fact that New Bunren's own corporate representative cannot distinguish between the marks at issue.

Accordingly, New Balance is entitled to summary judgment on its dilution claim.

**D.  Trademark Infringement - New Bunren Has Infringed New Balance's N Marks.**

Not only has New Bunren engaged in trademark dilution, but it has also infringed New Balance's N Marks.  To succeed on a claim for federal trademark infringement and its other related state-law claims,[2] New Balance must demonstrate that: (1) the N Marks are valid and legally protectable; (2) New Balance owns the N Marks; and (3) New Bunren's use of its "N" mark to identify goods/services is likely to create confusion concerning the origin of the goods/services. *Lingo*, 785 F. Supp. 2d at 449.  New Balance has already established that the N Marks are valid and legally protectable and that it owns these marks, and that New Bunren has used its "N" mark in commerce.  *See supra* Sections B. and C.2.  Therefore, the only remaining element New Balance must prove to establish trademark infringement is likelihood of confusion.

The Third Circuit employs the ten-factor *Lapp* test to determine whether a defendant's mark has caused a likelihood of confusion.  *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *Lorillard Tobacco*, 2012 WL 4867411, at *3.  These ten factors are:

> (1)  The degree of similarity between the N Marks and the marks used by New Bunren;
>
> (2)  The strength of the N Marks;
>
> (3)  The price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
> (4)  The length of time New Bunren has used the "N" mark without evidence of actual confusion;
>
> (5)  The intent of New Bunren in adopting the "N" mark;

---

[2] New Balance's claims for trademark infringement under 15 U.S.C. § 1114(a), false designation of origin under 15 U.S.C. § 1125(a), Delaware deceptive trade practices under 6 Del. C. § 2532, and Delaware common law trademark infringement and unfair competition are evaluated under the same standard.  *Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 756–58 (D. Del. 2017).

(6) Evidence of actual confusion;

(7) Whether the goods are marketed through the same channels of trade and advertised through the same media;

(8) The extent to which the targets of the parties' sales efforts are the same;

(9) The relationship of the goods in the minds of the consumers, whether because of the near-identity of the products or some other factor; and

(10) Other facts suggesting that the consuming public might expect New Balance to manufacture a product in New Bunren's market, or expect New Balance is likely to expand into New Bunren's market.

*Interpace*, 721 F.2d at 463.

The Court may afford different factors varying weights depending on the factual setting, and the Court should apply only those factors that seem appropriate in a given situation. *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 709 (3d Cir. 2004). In this case, the undisputed facts show that the majority of the factors weigh heavily in favor of New Balance.

### 1. New Bunren's Mark Is Virtually Identical to the N Marks and Is Used on Competing Footwear and Apparel Products.

"The single most important factor in determining likelihood of confusion is mark similarity." *Sabinsa*, 609 F.3d at 183 (3d Cir. 2010) (holding that FORSLEAN and FORSTHIN marks were confusingly similar); *Sanofi-Aventis*, 453 F. Supp. 2d at 848 (holding that AVENTIS and ADVANCIS marks were confusingly similar). In fact, if the "products are directly competing, and the marks are very similar, a district judge should feel free to consider only the similarity of the marks themselves." *Military Certified Residential Specialist, LLC v. Fairway Indep. Mortg. Corp.*, 251 F. Supp. 3d 750, 756 (D. Del. 2017) (quoting *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 214 (3d Cir. 2000)); *Lorillard Tobacco*, 2012 WL 4867411, at *4.

One look at the N Marks and New Bunren's "N" mark shows that this factor weighs decisively in New Balance's favor. The marks are virtually identical. SOF ¶¶ 1-3, 30, 33-34. At the deposition of New Bunren's corporate representative, Ms. Shy Fu Pao was provided with an image of New Balance's shoes with one of its N Marks on the left and an image of New Bunren's

shoes with its "N" mark on the right. SOF ¶ 42. When asked whether she could recognize the shoe on the left as either New Balance or New Bunren, she responded "I cannot recognize." SOF ¶ 42. When asked the same about the shoes on the right—the image of her own company's shoes— she again admitted that she could not tell if they were New Balance's or New Bunren's. SOF ¶ 42. This bears repeating—*New Bunren's sole corporate representative could not distinguish between New Balance products and New Bunren products when images of those products prominently bearing their respective trademarks were placed side by side in front of her*. Moreover, the parties do not dispute that the marks are used on identical products—footwear and apparel—and directly compete. SOF ¶¶ 1-3, 30, 37-38. Not only does the similarity factor weigh strongly in favor of New Balance, but this factor disposes of the issue of likelihood of confusion entirely, and the Court need not consider the other factors to grant New Balance's motion for summary judgment. *Military*, 251 F. Supp. 3d at 756; *Lorillard Tobacco*, 2012 WL 4867411, at *4.

### 2. The Remaining *Lapp* Factors Favor New Balance.

Even if the Court looks to the remaining *Lapp* factors, it will find that the undisputed evidence heavily favors New Balance.

***First*,** the N Marks are strong. As discussed above, the N Marks are presumptively strong because they have achieved incontestable status. *Supra* Section C.4; *Pennzoil-Quaker State*, 2008 WL 4107159, at *12. The N Marks are conceptually strong because the N Marks are arbitrary. *Sabinsa*, 609 F.3d at 185. And the N Marks are commercially strong because of New Balance's far-reaching advertising campaign featuring the N Marks that has driven overwhelming sales. *Rockland Mortg.*, 835 F. Supp. at 193 (holding that extensive advertising campaigns and substantial sales numbers evidence commercial strength).

***Second*,** many of New Balance's and New Bunren's target customers—consumers of footwear and apparel—are unlikely to exercise substantial care when purchasing these everyday products. The likelihood of confusion is greater where the products at issue are common consumer items or inexpensive because purchasers are less likely to exercise a great deal of care in

determining the source of these kinds of products. *Alliance Bank v. New Century Bank*, 742 F. Supp. 2d 532, 559–60 (E.D. Pa. 2010); *K-Swiss, Inc. v. USA AISIQI Shoes Inc.*, 291 F. Supp. 2d 1116, 1125 (C.D. Cal. 2003) (holding that purchasers were unlikely to exercise substantial care when purchasing shoes, a common consumer item, priced at $50-100 per pair). Here, New Balance's products, on average, retail for anywhere between $50-$180. SOF ¶ 46. Many courts have held that purchasers of this exact category of products—footwear and sportswear—are unlikely to exercise a great deal of care in distinguishing between trademarks when purchasing their goods. *Adidas Am., Inc. v. Skechers USA, Inc.*, No. 3:15-cv-01741-HZ, 2017 WL 3319190, at *18–19 (D. Or. Aug. 3, 2017); *M'Otto Enters., Inc. v. Redsand, Inc.*, 831 F. Supp. 1491, 1502 (W.D. Wash. 1993); *Gucci Am., Inc. v. Action Activewear, Inc.*, 759 F. Supp. 1060, 1066 (S.D.N.Y. 1991) ("[T]he court has no reason to conclude that the buyers of casual sportswear represent a particularly sophisticated group of customers."). Accordingly, this factor favors New Balance.

**Third,** the actual confusion factor also favors New Balance. "Evidence of actual confusion is frequently difficult to find," and "is not necessary to demonstrate a likelihood of success." *Sabinsa*, 609 F.3d at 187. But because reliable evidence of actual confusion can be so difficult to find, "*any such evidence is substantial evidence* of likelihood of confusion." *Kos*, 369 F.3d at 720 (emphasis in original); *see also Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 259 (2d Cir. 1987) ("no more positive or substantial proof"). In this case, there is evidence of actual confusion. New Bunren's sole corporate representative could not even distinguish between New Bunren's mark and New Balance's N Marks when presented with the two side-by-side at her own deposition. SOF ¶ 42; *see Dorsey v. Black Pearl Books, Inc.*, Civil Action No. 06-2940(JAG), 2006 WL 3327874, at *9 n.7 (D.N.J. Nov. 14, 2006) (holding that actual confusion factor favored plaintiff and that "even one instance of actual confusion is significant to the Court's inquiry"); *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 323 (3d Cir. 2015) (quoting *Kos*, 369 F.3d at 711) (reiterating "that the Lanham Act protects against 'the use of trademarks which are likely to cause confusion, mistake, or deception *of any kind*, not merely of purchasers nor simply as to source of origin'"). Thus, this factor should weigh in favor of New

Balance.

**Fourth,** in adopting such a similar mark, New Bunren intended to trade off of the goodwill that New Balance has developed in the N Marks.  While courts do not require evidence of the defendant's intent to find trademark infringement, such evidence heavily favors such a finding. *Sabinsa*, 609 F.3d at 187; *Kos*, 369 F.3d at 721.  This factor favors New Balance because, as explained above, the undisputed evidence of New Bunren's conduct demonstrates its intent to misappropriate New Balance's hard-earned goodwill in the N Marks.  *Supra* Section C.4.  Its website and products evidence New Bunren's intent, virtually replicating the designs and other brand indicia employed by New Balance.  SOF ¶¶ 3, 33-34, 37, 44.  Moreover, New Bunren's use of a slanted block "N" mark transition its conduct from imitation to flat out counterfeiting, evidencing a clear intent to highjack New Balance's brand for itself.  New Bunren's decision to use its "N" mark can be explained only as an intentional attempt to seize on New Balance's goodwill.  *See Kos*, 369 F.3d at 721.

**Fifth,** New Balance and New Bunren market virtually identical footwear and apparel online to the same broad group of consumers.  The more similar the products, advertising and marketing campaigns, and target consumers, the more likely consumers are to confuse the marks. *Sabinsa*, 609 F.3d at 189; *E.A. Sween¸* 19 F. Supp. 3d at 572.  In *Sabinsa*, the Third Circuit held that where two products were physically identical and marketed under the same category ("weight management products"), these factors weighed "clearly in favor of the [the plaintiff]."  *Sabinsa*, 609 F.3d at 189.  The product similarity, trade channels, and target consumers factors all weigh in New Balance's favor.

New Bunren cannot reasonably dispute that it uses a virtually identical mark on competing athletic footwear and apparel products.  SOF ¶¶ 1-3, 30, 33, 36-38  Thus, the Court need not consider the other factors to conclude that New Bunren's mark causes a likelihood of confusion. *Military*, 251 F. Supp. 3d at 756.  But even if it does, the majority of the remaining factors weigh heavily in favor of New Balance, and none of the factors weigh in favor of New Bunren.  For these reasons, New Balance is entitled to judgment as a matter of law on the trademark infringement

claims that are the subject of this motion.

**E.     Trademark Counterfeiting - New Bunren's "N" Mark Is A Counterfeit.**

New Bunren's "N" mark is so similar to New Balance's N Marks, and its campaign to copy New Balance's products, brand, and marks is so transparent, that New Bunren's infringement rises to the level of trademark counterfeiting.  To succeed in establishing trademark counterfeiting, New Balance must demonstrate that New Bunren intentionally infringed the N Marks knowing that its mark was counterfeit or that it was willfully blind to such use.  *Astrazeneca*, 209 F. Supp. 3d at 755; *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 580 (E.D. Pa. 2002).  The Lanham Act defines a "counterfeit" as "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1127.  The comparison between the registered mark and infringing mark is "made from the perspective of the average purchaser rather than an expert."  *Astrazeneca*, 209 F. Supp. 3d at 755.  The marks "need not be identical," and any minor differences that would not be apparent to the typical consumer are legally insignificant.  *Id.*; *Consol. Cigar Corp. v. Monte Cristi de Tobacos*, 58 F. Supp. 2d 188, 196 (S.D.N.Y. 1999).

As already discussed, *supra* Section D, New Bunren's "N" mark infringes New Balance's N Marks.  Moreover, New Bunren's infringement was part of a deliberate plan to appropriate New Balance's goodwill in the N Marks, or at the very least was the result of a willful attempt to remain blind to the rights New Balance owned in the N Marks.  *Supra* Section C.4.  Finally, New Balance has shown that the infringing mark adopted and used by New Bunren is so similar to New Balance's N Marks that it amounts to a counterfeit.  *Supra* Sections C.4 and D.1.  *See, e.g.*, *Astrazeneca*, 209 F. Supp. 3d at 755 (two-tone purple pill was counterfeit of a solid color purple pill); *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13cv3669 (DLC), 2014 WL 6850966, at *16 (S.D.N.Y. Dec. 4, 2014) (defendant's logo was a counterfeit of plaintiff's where both logos consisted of an upside-down T stacked atop another T, but defendant's had a vertical division cutting the image in half and plaintiff's did not, among other differences); *Coach, Inc. v. Horizon*

*Trading USA Inc.*, 908 F. Supp. 2d 426, 434 (S.D.N.Y. 2012) (holding that GC mark on sunglasses was a counterfeit of plaintiff's CC mark). Again, the marks are so similar that New Bunren's own corporate representative could not tell the difference between her company's mark and New Balance's. SOF ¶ 42. There can be no dispute of this highly material fact, and thus New Balance is entitled to summary judgment that New Bunren's "N" mark is a counterfeit.

**F.     New Balance Is Entitled to an Injunction.**

New Balance is entitled to a permanent injunction to prevent New Bunren from using its "N" mark going forward. New Balance may obtain an injunction because New Bunren is liable for diluting New Balance's famous N Marks, "regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury." 15 U.S.C. § 1125(c)(1). Additionally, where a defendant is liable for trademark infringement and counterfeiting, the Court may issue a permanent injunction. 15 U.S.C. § 1116(a); *Sanofi-Aventis*, 453 F. Supp. 2d at 857. A permanent injunction is appropriate where (1) New Balance has shown actual success on the merits; (2) New Balance will suffer irreparable harm if it is denied injunctive relief; (3) the balance of harms favors New Balance; and (4) the injunction would be in the public interest. *Id.* (citing *Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001)).

New Balance succeeds on all four injunction factors. First, New Balance has already demonstrated actual success on the merits of its trademark dilution, infringement, and counterfeiting claims. Second, New Balance will suffer irreparable harm because it has lost control of its N Marks. *AAMCO Transmissions, Inc. v. Dunlap*, 646 F. App'x 182, 183 (3d Cir. 2016); *7-Eleven, Inc. v. Upadhyaya*, 926 F. Supp. 2d 614, 630 (E.D. Pa. 2013). Loss of control of reputation, loss of trade, and loss of goodwill all constitute irreparable harm because "it is virtually impossible to ascertain the precise economic consequences." *Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 145 F. Supp. 3d 311, 319 (D. Del. 2015) (quoting *Kos*, 369 F.3d at 726). Moreover, "the Third Circuit recognizes 'trademark infringement amounts to irreparable injury as a matter of law.'" *Am. Bridal & Prom Indus. Ass'n, Inc. v. Jollyprom.com*, Civ. No. 17-2454, 2018 WL 1226106, at *4 (D.N.J.

Mar. 9, 2018) (quoting *Gucci Am., Inc. v. Daffy's Inc.*, 354 F.3d 228, 237 (3d Cir. 2003). In addition, "[w]here trademark violations have been pled, including . . . through counterfeited products, irreparable injury becomes the inescapable conclusion." *Id.* Here, New Bunren has ridden the coattails of New Balance's hard-earned reputation in the N Marks, and as a result risks significantly impairing that reputation. New Balance cannot adequately be protected from such irreparable harm unless New Bunren is ordered to cease use of its infringing "N" mark. *Id.* at *4 ("While damages can compensate a plaintiff for the injury incurred to this point, it will not protect against future infringement.")

Third, the balance of harms favors New Balance where New Balance will suffer irreparable harm and the only "hardship" imposed on New Bunren is to stop engaging in unlawful conduct. *E.A. Sween*, 19 F. Supp. 3d at 577. In balancing the harms between parties, the Court should not consider injuries that a defendant would suffer because it chose to adopt an infringing mark—a party "can hardly claim to be harmed where it brought [the harm upon itself]." *Kos*, 369 F.3d at 728–29. New Bunren cannot avoid an injunction requiring it to follow the law simply because it would be too burdensome to undo its decision to infringe.

Finally, the public interest favors an injunction because the public has an interest in "a truthful and accurate marketplace, while there is no public interest served by consumer confusion." *E.A. Sween*, 19 F. Supp. 3d at 577 (citing *Kos*, 369 F.3d at 730); *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 689–90 (D.N.J. 2015) (holding that public interest was furthered by issuance of a permanent injunction to protect trademarks from counterfeiting). Accordingly, New Balance is entitled to an injunction to immediately stop New Bunren's unlawful conduct.

## G.    New Balance Is Entitled to Statutory Damages.

New Balance is entitled to recover at least $2 million in statutory damages, in lieu of actual damages, under 15 U.S.C. § 1117(c) for New Bunren's willful use of a counterfeit "N" mark. In the case of willful use of a counterfeit, the Court may award up to $2 million *per* counterfeit mark *per* type of good sold, offered for sale, or distributed. 15 U.S.C. § 1117(c)(2). Even where the

counterfeiting is not willful, New Balance may recover up to $200,000 per violation. *Id.* § 1117(c)(1). Willful conduct entails "an aura of indifference to the plaintiff's rights or a deliberate and unnecessary duplicating of a plaintiff's mark in a way that was calculated to appropriate or otherwise benefit from the goodwill the plaintiff had nurtured." *Veit*, 211 F. Supp. 2d at 583 (quoting *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999)). "The fact that Defendant sold goods using marks that were identical to such strong and established marks conclusively demonstrates his desire and purpose to trade upon [Plaintiff]'s goodwill." *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008). Willfulness can also be inferred where a defendant continued its infringing behavior after receiving notice. *Veit*, 211 F. Supp. 2d at 583.

New Bunren's deliberate and willful conduct here warrants enhanced statutory damages. New Bunren cannot dispute the fact that its counterfeit "N" mark is strikingly similar to New Balance's N Marks. SOF ¶¶ 1-3, 30, 33-34. Nor can New Bunren dispute the worldwide fame, success, and overall strength of the N Marks. SOF ¶¶ 5, 8-10, 12-25. Such conduct "conclusively demonstrates [New Bunren]'s desire and purpose to trade on [New Balance]'s goodwill." *Gordashevsky*, 558 F. Supp. 2d at 538. Moreover, New Bunren has known since the day that it "conceived" of its slanted block "N" mark that New Balance was already using the N Marks to market footwear and athletic apparel. SOF ¶ 45. And New Bunren has known since at least 2016 (and likely much earlier) that New Balance opposed its use of the block "N" mark based on New Balance's filing of a cancellation proceeding in the TTAB. SOF ¶¶ 28-29, 45. Nonetheless, New Bunren persists in using its "N" mark. SOF ¶¶ 33-34.

In determining the amount of statutory damages per violation, the Court is given wide discretion. *Veit*, 211 F. Supp. 2d at 583. Among other factors, the Court may consider the defendant's state of mind and the deterrent effect on the defendant and others. *See id.* at 583–84; *Matos*, 133 F. Supp. 3d at 688; *Microsoft Corp. v. Silberstein*, Civil Action No. 06-3206 (HAA), 2009 WL 10690512, at *8–9 (D.N.J. Jan. 29, 2009) (holding that defendant acted willfully and awarding statutory damages because defendant continued infringing conduct after the case was

filed and defendant showed no qualms about his illegal activity at his deposition). "[D]efendant's intent and behavior are the foremost consideration." *Microsoft*, 2009 WL 10690512, at *9. A defendant's state of mind supports a substantial statutory damages award where the defendant's conduct appears to be "brazen and willful." *Audi AG v. Posh Clothing, LLC*, Civil Action No. 18-14254, 2019 WL 1951166, at *6 (D.N.J. May 2, 2019) (awarding $1,000,000 for each general company mark infringed upon). The "infringement award . . . escalate[s] in direct proportion to the blameworthiness of the infringing conduct." *Universal City Studios, Inc. v. Ahmed*, No. CIV. A. 93-3266, 1994 WL 185622, at *3 (E.D. Pa. May 13, 1994) (quoting *Original Appalachian Artworks, Inc. v. J.F. Reicher, Inc.*, 658 F. Supp. 458, 465 (E.D. Pa. 1987)).

In this case, the Court should award New Balance statutory damages of at least $2 million. New Bunren's conduct is reprehensible and should not be condoned. Since 2014, New Bunren has purposely undermined New Balance's hard-earned goodwill and reputation associated with the N Marks by using a knock-off "N" mark on "knock-off" products. Accordingly, a substantial award of at least $2 million is warranted in this case.[3] But even in the unlikely event the Court finds that this is a non-willful violation, New Balance should be awarded $200,000 multiplied by at least five types of goods the mark was used on for a total of at least $1 million.

## H.     New Balance Is Entitled to Reasonable Attorneys' Fees and Costs.

In addition to statutory damages, New Balance is also entitled to recover its reasonable attorneys' fees and costs incurred due to New Bunren's dilution and infringement of the N Marks.

_____

[3] New Balance is likely entitled to an award far greater than $2 million. The amount of a statutory damages award per violation is multiplied by the number of Plaintiff's marks that were copied and the number of types of counterfeit goods sold or offered for sale. *Chanel, Inc. v. Guetae*, Civil Action No. 07-3309 (JAG), 2009 WL 1653137, at *5 (D.N.J. June 8, 2009). New Bunren signed sworn declarations submitted to the USPTO stating that it was using its "N" mark in connection with "hats, socks, gloves, belts, shoes, bodysuits, scarves, dance tops and dance bottoms and swimsuits, t-shirts, polo shirts, short-sleeve shirts, shorts, pants, sweaters, hooded sweat shirts, pullovers, tights, jackets." SOF ¶¶ 30-31. Depending on how fine-grained "types" of goods are determined, this amounts to as many as 20 different types of goods. Even if "types" of goods is considered more coarse-grained, New Bunren surely used its mark on at least five types of goods. And New Bunren copied the N Marks covered by up to eight New Balance trademark registrations.

In cases of willful trademark counterfeiting, courts routinely award plaintiffs their attorneys' fees under 15 U.S.C. § 1117(b) when the plaintiff has elected to recover statutory damages under § 1117(c). *See, e.g.*, *Chanel, Inc. v. Guetae*, Civil Action No. 07-3309 (JAG), 2009 WL 1653137, at *5 (D.N.J. June 8, 2009); *Chanel, Inc. v. ENS Jewelry, Inc.*, Civil Action No. 08-2005 (JAG), 2009 WL 1298406, at *6 (D.N.J. May 8, 2009); *Tiffany, Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); *Rolex Watches U.S.A., Inc. v. Jones*, No. 99 CIV. 2359(DLC)(FM), 2002 WL 596354, at *6 (S.D.N.Y. Apr. 17, 2002).

New Balance is also entitled to attorneys' fees under 15 U.S.C. § 1117(a), which permits a prevailing party to recover attorneys' fees in "exceptional cases." A case is exceptional if it "stands out from others with respect to the substantive strength of the party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314 (3d Cir. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). The court evaluates each case on its own, considering the totality of the circumstances. *Id.* at 315. The more culpable the losing party's conduct, the more likely a case will be exceptional. *Id.* District courts in this Circuit have routinely found that willful trademark infringement constitutes an "exceptional case." *See, e.g.*, *Cartier Int'l AG v. Daniel Markus, Inc.*, Civil Action No. 10-1459 (JLL), 2011 WL 3881498, at *7 (D.N.J. Sept. 2, 2011) (citing *SecuraCom Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 280 (3d Cir. 2000)); *Holt's Co. v. Hoboken Cigars, LLC*, Civ. No. 09-3782 (WJM), 2010 WL 4687843, at *4 (D.N.J. Nov. 10, 2010) (collecting cases). Here, New Bunren's intentional, willful campaign to commandeer the goodwill that New Balance has cultivated in its N Marks makes this an "exceptional case" and warrants an award of attorneys' fees. *See supra* Section C.4.

## V.  CONCLUSION

For all of the foregoing reasons, New Balance respectfully asks that the Court grant its motion for partial summary judgment on its trademark dilution, infringement, counterfeiting, and

related state law claims, award it at least $2 million in statutory damages, and permit it to recover attorneys' fees and costs from New Bunren in an amount to be determined.

Dated: May 17, 2019                               Respectfully submitted,


                                                  /s/ Arthur G. Connolly, III
                                                  Arthur G. Connolly, III (#2667)
                                                  Ryan P. Newell (#4744)
                                                  Connolly Gallagher LLP
                                                  1201 North Market Street
                                                  20th Floor
                                                  Wilmington, Delaware 19801
                                                  T: (302) 757-7300
                                                  F: (302) 757-7299
                                                  Email: aconnolly@connollygallagher.com
                                                  Email: rnewell@connollygallagher.com

                                                  ***Attorneys for Plaintiff New Balance***

Of Counsel:

Thomas L. Holt (*PHV*)
Jeremy L. Buxbaum (*PHV*)
Perkins Coie LLP
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603
T: (312) 324-8400
F: (312) 324-9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com