# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NEW BALANCE ATHLETICS, INC., <br><br> Plaintiff, <br><br> v. <br><br> USA NEW BUNREN INTERNATIONAL CO. LIMITED LLC, <br><br> Defendant. | Civil Action No. 17-cv-01700-MN <br><br> Honorable Maryellen Noreika |

## PLAINTIFF'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
T: (302) 757-7300
F: (302) 757-7299
Email: aconnolly@connollygallagher.com
Email: rnewell@connollygallagher.com

*Attorneys for Plaintiff New Balance*

Of Counsel:

Thomas L. Holt (*PHV*)
Jeremy L. Buxbaum (*PHV*)
Perkins Coie LLP
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603
T: (312) 324-8400
F: (312) 324-9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com

Dated: June 14, 2019

## TABLE OF CONTENTS

**Page**

I. ARGUMENT ........................................................................................................................ 1

    A. There Is No Dispute of Material Fact that New Bunren Has Used Its "N" Mark in Commerce. ................................................................................................... 1

    B. There Is No Dispute of Material Fact that New Bunren's "N" Mark Is Likely to Be Confused with New Balance's N Marks. ........................................... 5

    C. New Balance Is Entitled to an Award of Statutory Damages and Attorney's Fees. ................................................................................................... 9

II. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*,
    237 F.3d 198 (3d Cir. 2000) ............................................................................................. 7

*A.J. Cranfield Co. v. Honickman*,
    808 F.2d 291 (3d Cir. 1986) ............................................................................................. 7

*Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*,
    793 F.3d 313 (3d Cir. 2015) ............................................................................................. 6

*Astrazeneca AB v. Dr. Reddy's Labs., Inc.*,
    209 F. Supp. 3d 744 (D. Del. 2016) ................................................................................. 9

*BTG Patent Holdings LLC v. Bag2Go, GmbH*,
    193 F. Supp. 3d 1310 (S.D. Fla. 2016) ............................................................................ 2

*Cartier Int'l AG v. Daniel Markus, Inc.*,
    Civil Action No. 10-1459 (JLL), 2011 WL 3881498 (D.N.J. Sept. 2, 2011) ................ 10

*Castle Oil Corp. v. Castle Energy Corp.*,
    Civ. A. No. 90-6544, 1992 WL 394932 (E.D. Pa. Dec. 29, 1992) ................................. 4

*Chanel v. Guatae*,
    Civil Action No. 07-3309 (JAG), 2009 WL 1653137 (D.N.J. June 8, 2009) ............... 10

*Coach, Inc. v. Horizon Trading USA Inc.*,
    908 F. Supp. 2d 426 (S.D.N.Y. 2012) ............................................................................. 9

*Dillie Family Tr. v. Nowlan Family Tr.*,
    207 F. Supp. 3d 535 (E.D. Pa. 2016) .............................................................................. 3

*E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC*,
    19 F. Supp. 3d 560 (D.N.J. 2014) ................................................................................... 7

*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*,
    30 F.3d 466 (3d Cir. 1994) ............................................................................................. 6

*Harp v. Rahme*,
    984 F. Supp. 2d 398 (E.D. Pa. 2013) .......................................................................... 7, 9

*Interpace Corp. v. Lapp, Inc.*,
    721 F.2d 460 (3d Cir. 1983) .................................................................................... 6, 7, 8

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Levi Strauss & Co. v. Shilon*,
  121 F.3d 1309 (9th Cir. 1997) ................................................................................................2

*Orthovita, Inc. v. Erbe*,
  No. 07-2395, 2008 WL 423446 (E.D. Pa. Feb. 14, 2008) .......................................................2

*Peek & Cloppenburg KG v. Revue, LLC*,
  No. 11 Civ 5967(DAB), 2012 WL 4470556 (S.D.N.Y. Sept. 19, 2012) ..................................2

*Robert Kirkman, LLC v. Theodorou*,
  Civil Action No. 15-8474 (MAS)(DEA), 2016 WL 7015624 (D.N.J. Nov. 30,
  2016) ........................................................................................................................................3

*Sabinsa Corp. v. Creative Compounds, LLC*,
  609 F.3d 175 (3d Cir. 2010)......................................................................................................6

*Times Mirror Magazines, Inc. v. Las Vegas Sports New, L.L.C.*,
  212 F.3d 157 (3d Cir. 2000).......................................................................................................3

**STATUTES**

15 U.S.C. § 1117(a) ............................................................................................................10

15 U.S.C. § 1117(b) ............................................................................................................10

The uncontroverted evidence clearly establishes that New Bunren used its "N" mark in U.S. commerce and that this mark violates New Balance's well-established rights in its famous block N Marks. New Bunren's attempts to create a genuine issue of material fact have no factual or legal support, and in fact, run completely counter to the evidentiary record and numerous representations New Bunren has made throughout this case. Over and over again, in production documents, in verified interrogatory responses, in responses to requests for admission, and in sworn deposition testimony, New Bunren confirmed that it advertised, marketed, and offered for sale in the U.S. products bearing its infringing "N" mark. For New Bunren to now assert in summary judgment briefing that it did not use the "N" mark in commerce is not only disingenuous and contrary to all available evidence and relevant legal authority, it undermines the credibility of the discovery process. Moreover, the record demonstrates that the "N" mark that New Bunren *uses* in commerce is virtually indistinguishable from New Balance's N Marks. New Bunren's reliance on imperceptible design elements within its previously registered "N" marks is a short-sighted attempt to distract the Court from New Bunren's egregious marketplace activities.

New Bunren's misrepresentations and unfounded assertions in summary judgment briefing create no genuine issues of material fact that would preclude the Court from granting New Balance's motion for partial summary judgment.

### I.    ARGUMENT

**A.    There Is No Dispute of Material Fact that New Bunren Has Used Its "N" Mark in Commerce.**

There can be no dispute that New Bunren used its "N" mark in commerce by marketing, promoting, and offering for sale in the U.S. products bearing its infringing "N" mark. New Balance has cited no fewer than 15 instances in which New Bunren unequivocally stated that it used the "N" mark in commerce. *See* Declaration of Jeremy Buxbaum in Support of Plaintiff's Motion for Partial Summary Judgment (D.I. 62) ("Buxbaum Decl."), Ex. 38 (Ans. to Inter. Nos. 9, 10, 12), Ex. 65 (Ans. to RFA Nos. 14, 15), Ex. 39 at 65:15-20; 66:4-66:7; 89:11-13; 91:12-19; 93:22-94:5; 95:1-5; 95:22-96:7; 96:13-97:5; 100:10-13; 147:2-7; 200:3-7. In each of these instances, in

response to direct questions concerning its use of the "N" mark, New Bunren confirmed and described its use. New Bunren's admissions that it used the "N" mark in commerce are further bolstered by documentary evidence, including screenshots of the New Bunren website showing footwear with the "N" mark being marketed and promoted, and screenshots of the Taobao website showing footwear bearing New Bunren's "N" mark being offered for sale. Declaration of Timothy T. Wang ("Wang Decl.") (D.I. 57), Exs. G, H; Buxbaum Decl. (D.I. 62), Exs. 9, 53-55 and Ex. 56. And New Bunren filed Statements of Use with the USPTO in which New Bunren declared under oath that its "N" mark was being used in U.S. commerce. Buxbaum Decl. (D.I. 62), Exs. 47-52.

New Bunren conveniently omits any reference to this overwhelming evidence of "use in commerce" in its submission to the Court. Instead, it misconstrues key facts and misapplies the law in a futile and unsuccessful attempt to create a genuine issue of fact.

The law is clear that actual sales of products bearing the infringing mark are unnecessary to show "use in commerce." Instead, a plaintiff must prove only that defendant marketed, promoted, or offered for sale products bearing the infringing marks. *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *12–13 (E.D. Pa. Feb. 14, 2008); *Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997); *BTG Patent Holdings LLC v. Bag2Go, GmbH*, 193 F. Supp. 3d 1310, 1323–24 (S.D. Fla. 2016); *Peek & Cloppenburg KG v. Revue, LLC*, No. 11 Civ 5967(DAB), 2012 WL 4470556, at *4 (S.D.N.Y. Sept. 19, 2012). The record clearly demonstrates that New Bunren engaged in each of these "use in commerce" activities.

New Bunren argues that its website does not constitute "use in commerce" because it did not display pricing information, purchasing instructions, or contact information for New Bunren, which it argues would be necessary to order the product. Defendant's Answering Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment (D.I. 63) at 1–2, 8–10, 13. This is not the standard, and New Bunren cites to no cases that state otherwise. Nor does New Bunren dispute that the products were marketed or promoted on its site. Defendant's Answer to Plaintiff's First Amended Complaint (D.I. 27) at ¶ 27; Buxbaum Decl. (D.I. 62), Ex. 39 at 200:3-7. Indeed, New Bunren's corporate representative admitted that the very purpose of the New Bunren website,

where images of its footwear and apparel products were displayed, was "[t]o sell the product." Buxbaum Decl. (D.I. 62), Ex. 39 at 89:11-13; 89:22-90:3; *see also id.*, Ex. 39 at 100:10-13; 104:17-105:5.

New Bunren's assertion that its conduct amounts to, at most, "preparatory steps" to using the mark in commerce is self-serving and directly undermined by the established facts. For example, in response to New Balance's Interrogatory No. 9 asking about "any use in commerce" of the infringing marks, New Bunren stated that the infringing marks had been used on the designated products "*available at*" its website and Taobao.com. Buxbaum Decl. (D.I. 62), Ex. 38 (emphasis added). Additionally, during Ms. Pao's deposition she stated that "We still have the Taobao. Yeah, they can -- they can *order* and they can *buy it* there." *Id.*, Ex. 39 at 91:12-19 (emphasis added). And once again, when directly asked if New Bunren's product is "available to buy through Taobao," Ms. Pao unequivocally stated "Yes," and that it was available for distribution in the U.S. *Id.*, Ex. 39 at 147:2-7. These admissions are further supported by documentary evidence produced during this litigation, including screenshots produced by New Bunren of New Bunren products available on the Taobao website. Buxbaum Decl. (D.I. 62), Ex. 56.

Additionally, the cases New Bunren relies on in support of its "preparatory steps" argument are inapposite. For example, the language from *Dillie Family Tr. v. Nowlan Family Tr.* that New Bunren quotes describes what constitutes a "good" under the Lanham Act, and does not relate to the question of what constitutes "use in commerce" under the Act. 207 F. Supp. 3d 535, 534 (E.D. Pa. 2016). New Bunren's reliance on *Times Mirror Magazines, Inc. v. Las Vegas Sports New, L.L.C.* is also misplaced, as "use in commerce" was not even at issue on appeal. 212 F.3d 157, 163 (3d Cir. 2000) ("Appellant only challenges the [famous] and [likelihood of dilution] prongs of Times Mirror's prima facie claim for dilution" and not the use-in-commerce element.).

In the remaining cases that New Bunren cites for its "preparatory steps" argument, the defendants' conduct was materially different than the conduct New Bunren has engaged in and admitted to in this case. *See Robert Kirkman, LLC v. Theodorou*, Civil Action No. 15-8474

(MAS)(DEA), 2016 WL 7015624, at *3 (D.N.J. Nov. 30, 2016) (defendants had only applied for registrations of infringing marks); *Castle Oil Corp. v. Castle Energy Corp.*, Civ. A. No. 90-6544, 1992 WL 394932, at *9 (E.D. Pa. Dec. 29, 1992) (defendant had used the mark as a component of its name in one press release). Moreover, the *Castle Oil* quote cited by New Bunren explicitly acknowledges that use of the infringing mark in connection with advertising goods would constitute a "use" under the Lanham Act. 1992 WL 394932, at *9. Here, New Bunren has admitted that it has "marketed" and "advertised" the "N" mark in the U.S., Buxbaum Decl. (D.I. 62), Exs. 65, 39 at 65:15-20; 200:3-7, that its products bearing its "N" mark were "available" in the U.S., *id.*, Exs. 38, 39 at 93:22-94:5; 95:1-5; 95:22-96:7; 147:2-7, and that New Bunren put its product on the Taobao website for U.S. consumers to "buy" or "purchase," *id.*, Ex. 39 at 66:4-66:7; 91:12-19; 95:1-5; 96:13-97:5; 147:2-7. New Bunren cannot run away from these uncontroverted admissions or the corroborating materials produced in this case. *See* Wang Decl. (D.I. 57), Exs. G, H; Buxbaum Decl. (D.I. 62), Exs. 9, 47–56.

New Bunren also focuses on a potential use in commerce that New Balance does not rely on in its motion for partial summary judgment, namely, the purchase of New Bunren's footwear by New Balance's counsel. *See* Answering Brief (D.I. 63) at 9. New Bunren's disregard for the actual facts cited by New Balance is telling, and it cannot create a genuine issue of material fact by simply pointing to some other potential use and then explaining how *it* "doesn't count." (*See* D.I. 63 at 9-10).

Finally, New Bunren has left no doubt that *it*, USA New Bunren, the defendant in this lawsuit, and not Qierte, has engaged in the admitted conduct and taken credit for it. *See, e.g.*, Buxbaum Decl. (D.I. 62), Ex. 39 at 66:4-66:7 ("Q. How can they buy if you don't have it for sale? A. *I* put it on the [New Bunren] website and Taobao too.") (emphasis added); *id.*, Ex. 39 at 91:12-19 ("Q. So if the product was not available for sale through your website, how could consumers in the U.S. purchase the product? A. *We* still have the Taobao. Yeah, they can -- they can order and they can buy it there.") (emphasis added). New Bunren's responses to New Balance's interrogatories and requests for admission also demonstrate that *Defendant USA New Bunren*

admitted to use in commerce:

> **New Balance's Interrogatory No. 10:** Describe how the goods offered under the Infringing Marks are marketed and sold, including by identifying the specific methods by which the goods are or will be advertised and promoted under the Infringing Marks.
> **New Bunren's Response:** *Defendant's goods* are marketed via the www.new-bunren.com website. *Defendant's goods* are also available at the Chinese e-commerce website Taobao.com.
>
> **New Balance's Interrogatory No. 12:** Identify all retail locations (including websites) where products have been or are being sold under the Infringing Marks in the United States.
> **New Bunren's Response:** No products carrying Defendant's Marks have actually been sold in the United States. *Defendant's products* are available at the Chinese e-commerce website Taobao.com.
>
> **New Balance's Request for Admission No. 14:** *Defendant* has not marketed any products under the Infringing Marks in the United States.
> **New Bunren's Response:** Denied.
>
> **New Balance's Request for Admission No. 15:** Other than advertising at an NBA game and through its own website, *Defendant* has not engaged in any marketing activities under the Infringing Marks in the United States.
> **New Bunren's Response:** Denied.

SOF ¶ 33; Buxbaum Decl. (D.I. 62), Ex. 38, 65 (emphasis added). The uncontroverted evidence shows that New Bunren used its counterfeit "N" mark in U.S. commerce.

**B.    There Is No Dispute of Material Fact that New Bunren's "N" Mark Is Likely to Be Confused with New Balance's N Marks.**

In its Opening Brief, New Balance offered undisputed evidence that (i) New Bunren's "N" mark is virtually identical to New Balance's N Marks and is used on virtually identical products; (ii) that New Balance's N Marks are incontestable, conceptually strong, and are part of a worldwide advertising campaign that generated billions of dollars in sales; (iii) that New Balance and New Bunren target identical consumers through similar trade channels; (iv) that those consumers are unlikely to exercise care in distinguishing between the parties' respective marks;

(v) that New Bunren's corporate representative confused her own company's mark with New Balance's N Marks; and (vi) that New Bunren intended to copy New Balance's N Marks. (D.I. 59 at 16–19). In other words, New Balance analyzed each of the relevant likelihood of confusion factors as required by the Third Circuit's well-established precedent and demonstrated how that analysis unquestionably favors New Balance. *See Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983); *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 182–83 (3d Cir. 2010).

Faced with New Balance's comprehensive analysis, New Bunren first claims that New Balance's "entire Motion" (D.I. 63 at 4) hinges on only one factor—actual confusion—even though that does not remotely capture New Balance's analysis or the Third Circuit's view of actual confusion evidence, which is not necessary to succeed on a trademark infringement claim. *Sabinsa*, 609 F.3d at 187; *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 476 (3d Cir. 1994). New Bunren also urges the Court to disregard the fact that New Bunren's own corporate representative could not distinguish her company's own "N" mark from New Balance's N Marks simply because Ms. Pao purportedly "is not a consumer." (D.I. 63 at 11–12).

New Bunren's argument is misguided. First, New Balance analyzed each of the relevant *Lapp* factors, showing how the totality of the undisputed material facts for each relevant factor favored New Balance (D.I. 59 at 16–19). It did not rely exclusively, or even heavily, on Ms. Pao's confusion. However, Ms. Pao's confusion between her company's "N" mark and New Balance's N Marks does speak volumes of the likelihood that consumers will confuse the two marks. If New Bunren's corporate representative cannot tell the difference between the two marks, how can ordinary consumers be expected to distinguish them? Moreover, contrary to New Bunren's position, "*any kind*" of actual confusion evidence is relevant for trademark infringement cases, "not merely of purchasers." *Arrowpoint Capital Corp. v. Arrowpoint Asset Mgmt., LLC*, 793 F.3d 313, 323 (3d Cir. 2015) (emphasis in original). Thus, Ms. Pao's confusion between the two marks is strong evidence of likelihood of confusion even though she may not have been making a purchasing decision at the time she was confused.

The only remaining rebuttal evidence that New Bunren offers is the USPTO's initial decision to register New Bunren's "N" marks, but this evidence is unavailing for a litany of reasons.  First, to the extent that New Bunren argues that the "N" marks enjoy any presumptions of validity, ownership, or exclusivity by virtue of the marks' former registrations, those presumptions no longer apply because the TTAB cancelled the registrations.  *See A.J. Cranfield Co. v. Honickman*, 808 F.2d 291, 297, 299 n.9 (3d Cir. 1986); SOF ¶ 41.  Second, even if those presumptions did apply, they are not at all relevant to the likelihood of confusion analysis that this Court undertakes.  *See E.A. Sween Co., Inc. v. Deli Express of Tenafly, LLC*, 19 F. Supp. 3d 560, 568 (D.N.J. 2014); Plaintiff's Answering Brief in Opposition to Defendant's Motions for Partial Summary Judgment (D.I. 65) at 10.  Third, any weight that New Bunren places on the USPTO's registration analysis is improper.  New Bunren cites no legal authority for its contention that the USPTO's initial registration decisions regarding now-cancelled registrations carry any weight in the district court's likelihood of confusion analysis (D.I. 63 at 12-15).  The Third Circuit has held that the USPTO's analysis is fundamentally different from the district court's likelihood of confusion analysis.  *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220–21 (3d Cir. 2000).  Indeed, the USPTO lacks the benefit of a complete factual record, and its "low-level preliminary determination" also lacks the depth of the district court's complete, ten-factor likelihood of confusion test.  *Id.*  The district court, on the other hand, has access to a well-developed factual record presented by both parties after an appropriate discovery period and must then evaluate that record under each of the *Lapp* factors.  *Id.*; *Harp v. Rahme*, 984 F. Supp. 2d 398, 412 n.9 (E.D. Pa. 2013).

Finally, the USPTO's analysis is particularly unpersuasive here because the New Bunren "N" marks that the USPTO examined are substantially different from the New Bunren "N" marks that have been used in commerce and are the subject of this suit, as depicted below:



SOF ¶¶ 3, 30, 44.  The so called "flying bird" design in the applied-for "N" marks is inconspicuous in the "N" mark New Bunren uses on its products.  Thus, whatever value the USPTO's analysis may have had in the present litigation is discounted entirely because the USPTO was effectively evaluating a different mark than the Court is evaluating here.

New Balance has offered substantial evidence related to each of the relevant *Lapp* factors to show a likelihood of confusion. In response, New Bunren relies on an incomplete, incorrect analysis of one likelihood of confusion factor and the preliminary decision of the USPTO in examining a mark materially different than the mark at issue here. New Bunren has failed to rebut New Balance's showing that there is no genuine dispute of material fact as to likelihood of confusion, and thus, partial summary judgment in New Balance's favor should be granted.

C.  **New Balance Is Entitled to an Award of Statutory Damages and Attorney's Fees.**

New Balance has shown that it is entitled to statutory damages because New Bunren's knockoff "N" mark is a counterfeit of New Balance's N Marks. New Bunren's "N" mark is virtually identical to New Balance's N Marks and is used on virtually identical products.

| New Balance's N Mark<br>As Used in Commerce | New Bunren's "N" Mark<br>As Used in Commerce |
|---|---|



SOF ¶¶ 2-3.

Despite the obvious similarities between the marks, New Bunren contends that its "N" mark is not in fact a counterfeit because the USPTO has already examined it and at one time registered the marks (D.I. 63 at 15). New Bunren also contends that it has not used the mark in commerce in connection with an offer for sale (*Id.*). As discussed at length above, both of these contentions are without merit. New Bunren's "N" mark (the one used in the marketplace and the subject of this action) is virtually indistinguishable from New Balance's N Marks. *See Astrazeneca AB v. Dr. Reddy's Labs., Inc.*, 209 F. Supp. 3d 744, 755 (D. Del. 2016) (two-tone purple pill was counterfeit of solid color purple pill); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 434 (S.D.N.Y. 2012) (holding that GC mark on sunglasses was a counterfeit of plaintiff's CC

mark). And New Bunren has indeed used its mark in connection with an offer for sale as explained above and in New Balance's Opening Brief.

New Balance is also entitled to recover its attorney's fees. Courts routinely award attorneys' fees in cases of willful trademark counterfeiting. 15 U.S.C. § 1117(b); *see, e.g.*, *Chanel v. Guatae*, Civil Action No. 07-3309 (JAG), 2009 WL 1653137, at *5 (D.N.J. June 8, 2009). This same willful conduct frequently qualifies as an "exceptional case" justifying the award of attorneys' fees under 15 U.S.C. § 1117(a). *See, e.g.*, *Cartier Int'l AG v. Daniel Markus, Inc.*, Civil Action No. 10-1459 (JLL), 2011 WL 3881498, at *7 (D.N.J. Sept. 2, 2011). New Balance has presented substantial circumstantial evidence that New Bunren's decision to create a counterfeit "N" mark was part of a willful scheme to commandeer the goodwill that New Balance had developed in its N Marks. This included adopting a brand name, "New Bunren," that looks and sounds similar to New Balance; displaying the "New Balance" brand name on the New Bunren website; designing footwear and apparel products that look strikingly similar to New Balance's; placing a virtually identical block "N" mark on those products, and touting an "American Classic" "heritage" that is simply false and misleading. SOF ¶¶ 1-3, 30, 33-34, 36-37, 42, 44. New Bunren largely chooses to sidestep these facts, instead focusing on the parties' litigation conduct, a basis which New Balance has not asserted for awarding attorneys' fees (D.I. 63 at 15-16). But these facts, like its own discovery admissions regarding use of its "N" mark in commerce discussed above, do not disappear simply because New Bunren decides not to acknowledge them. In short, New Bunren has failed to create a genuine issue of material fact, and New Balance is entitled to partial summary judgment as a matter of law to recover statutory damages and attorneys' fees.

## II.  CONCLUSION

For all of the foregoing reasons, New Balance respectfully requests that the Court grant New Balance's motion for partial summary judgment.

Dated: June 14, 2019                              Respectfully submitted,

                                                /s/ Arthur G. Connolly, III
Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
T: (302) 757-7300
F: (302) 757-7299
Email: aconnolly@connollygallagher.com
Email: rnewell@connollygallagher.com

*Attorneys for Plaintiff New Balance*

Of Counsel:

Thomas L. Holt (*PHV*)
Jeremy L. Buxbaum (*PHV*)
Perkins Coie LLP
131 South Dearborn Street
Suite No. 1700
Chicago, Illinois 60603
T: (312) 324-8400
F: (312) 324-9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com