**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| NEW BALANCE ATHLETICS, INC. | |
| Plaintiff, | |
| v. | Civil Action No.: 1:17-cv-1700-MN |
| USA NEW BUNREN INTERNATIONAL CO. LIMITED LLC | Honorable Maryellen Noreika |
| Defendant. | |

**PLAINTIFF'S OPENING SUPPLEMENTAL BRIEF IN SUPPORT OF ITS
REQUEST FOR STATUTORY DAMAGES AND ATTORNEYS' FEES AND COSTS**

Dated:  February 5, 2020

OF COUNSEL:

Thomas L. Holt *(PHV)*
Jeremy L. Buxbaum *(PHV)*
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Telephone:  312.324.8400
Facsimile:  312.324.9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com

Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Stephanie Smiertka Riley (#5803)
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
Telephone: 302.757.7300
Facsimile: 302.757.7299
Email: aconnolly@connollygallagher.com
Email: rnewell@connollygallagher.com
Email: sriley@connollygallagher.com

***Attorneys for Plaintiff New Balance Athletics,
Inc.***

**TABLE OF CONTENTS**

**Page**

I.  NATURE AND STAGE OF THE PROCEEDINGS ........................................................ 1

II.  SUMMARY OF ARGUMENT ................................................................................... 1

III.  FACTUAL BACKGROUND ...................................................................................... 2

IV.  ARGUMENT ............................................................................................................. 5

    A.  Legal Standard ................................................................................................ 5

    B.  New Bunren's Use of Counterfeit Marks Was Willful. .................................. 5

        1.  New Bunren Continued Marketing and Offering Counterfeit Goods After Receiving Notice from New Balance of its Infringing Conduct. .............................................................................................. 6

        2.  New Bunren's Marketing and Offering of the Counterfeit Goods on the Internet was for Purposes of Wide Dissemination of Such Goods and Warrants Enhanced Statutory Damages. .................................. 7

        3.  New Bunren Traded on the Goodwill of New Balance by Using Virtually Identical Marks on Virtually Identical Products. ....................... 8

    C.  New Bunren's Counterfeit Mark Infringed Four New Balance Trademarks. .................................................................................................. 9

    D.  New Bunren Used Its Counterfeit Mark In Connection with 21 Types of Goods. ............................................................................................ 11

    E.  New Balance is Entitled to an Award of $840,000 in Statutory Damages. ..................................................................................................... 13

    F.  New Balance is Entitled to Its Reasonable Attorneys' Fees and Costs. ............................................................................................................ 15

        1.  This Is an Exceptional Case Because New Bunren's Counterfeiting Was Willful and Its Arguments Lacked Substantive Strength. ............... 15

        2.  New Bunren's Willful Counterfeiting Mandates an Award of Attorneys' Fees. ............................................................................... 18

V.  CONCLUSION ........................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.M. Surgical, Inc. v. Akhtar,*
No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560 (E.D.N.Y. Apr. 19, 2016)......................12

*Audi AG v. Posh Clothing, LLC,*
Civil Action No. 18-14254, 2019 WL 1951166 (D.N.J. May 2, 2019)..................................16

*Banjo Buddies, Inc. v. Tenosky,*
399 F.3d 168 (3d Cir. 2005)...............................................................................................6

*Bekins Holding Corp. v. BGT Trans, Inc.,*
No. 09-08982, 2010 WL 11597623 (C.D. Cal. 2010) ...........................................................7

*Cartier Int'l AG v. Daniel Markus, Inc.,*
Civil Action No. 10-1459 (JLL), 2011 WL 3881498 (D.N.J. Sept. 2, 2011) .........................16

*Chanel Inc., v. Matos,*
133 F.Supp.3d 678 (D.N.J. Aug. 13, 2015) ..........................................................8, 10, 12, 14

*Chanel, Inc. v. ENS Jewelry, Inc.,*
Civil Action No. 08-2005 (JAG), 2009 WL 1298406 (D.N.J. May 8, 2009) .........................19

*Chanel, Inc. v. Gordashevsky,*
No. 05-5270, 2007 WL 316433 (D.N.J. Jan 29, 2007)......................................................8, 9

*Chanel, Inc. v. Guetae,*
Civil Action No. 07-3309 (JAG), 2009 WL 1653137 (D.N.J. June 8, 2009) .........................19

*Coach, Inc. v. Bag Place, Co.,*
No. 10-6226, 2012 WL 13028160 (D.N.J. May 7, 2012) .......................................................8

*Coach, Inc. v. Bags & Accessories,*
Civil Action No. 10-2555, 2011 WL 1882403 (D.N.J. May 17, 2011) ............................10, 15

*Coach, Inc. v. Fashion Paradise, LLC,*
No. 10-4888, 2012 WL 194092 (D.N.J. Jan. 20, 2012).......................................6, 10, 14, 15

*Coach, Inc. v. Ocean Point Gifts,*
No. 09-4215, 2010 WL 2521444 (D.N.J. June 14, 2010)..................................................7, 10

*Coach, Inc. v. Paula's Store Sportwear LLC,*
Civil Action No. 13-3263 (SRC), 2014 WL 347893 (D.N.J. Jan. 31, 2014).........................15

# TABLE OF AUTHORITIES

**Page(s)**

*Delta Air Lines, Inc. v. Fly Tech, LLC*,
　2018 WL 1535231 (D.N.J. Mar. 29, 2018) ..................................................................... 14, 16

*Fair Wind Sailing, Inc. v. Dempster*,
　764 F.3d 303 (3d Cir. 2014) ................................................................................................. 17

*Holt's Co. v. Hoboken Cigars, LLC*,
　Civ. No. 09-3782 (WJM), 2010 WL 4687843 (D.N.J. Nov. 10, 2010) ................................. 16

*Howards v. Laws*,
　No. 13-0957, 2014 WL 3925536 (D.N.J. 2014) .................................................................... 7

*Louis Vuitton Malletier & Oakley, Inc. v. Veit*,
　211 F.Supp.2d 567 (E.D. Pa. 2002) .................................................................................... 6, 7

*Louis Vuitton Malletier, S.A. v. Mosseri*,
　No. 07-2620, 2009 WL 3633882 (D.N.J. Oct. 28, 2009) .................................................. 8, 10

*Microsoft Corp. v. Gonzales*,
　No. 06-4331, 2007 WL 2066363 (D.N.J. July 13, 2007) .................................................... 8, 9

*N.V.E., Inc. v. Day*,
　No. 07–4283, 2009 WL 2526744 (D.N.J. Aug.18, 2009) ...................................................... 9

*Northeastern Lumber Mfrs. Ass'n v. Sky of New York Corp.*,
　2018 WL 1605150 (D.N.J. Apr. 3, 2018) ............................................................................. 14

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
　572 U.S. 545 (2014) ............................................................................................................. 17

*Platypus Wear, Inc. v. Bad Boy Club, Inc.*,
　No. 08-02662, 2009 WL 2147843 (D.N.J. 2009) .............................................................. 7, 14

*Renna v. County of Union, N.J.*,
　Civil Action No. 11-3328 (KM), 2015 WL 93800 (D.N.J. Jan. 7, 2015) .......................... 17, 18

*River Light V, L.P. v. Lin & J Int'l, Inc.*,
　No. 13cv3669 (DLC), 2015 WL 3916271 (S.D.N.Y. June 25, 2015) .................................... 17

*Rolex Watches U.S.A., Inc. v. Jones*,
　No 99 CIV. 2359(DLC)(FM), 2002 WL 59354 (S.D.N.Y. Apr. 17, 2002) ............................ 19

*Rolls-Royce PLC v. Rolls-Royce USA, Inc.*,
　688 F. Supp. 2d 150 (E.D.N.Y. 2010) .................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

*SecuraComm Consulting, Inc. v. Securacom Inc.*,
   166 F.3d 182 (3d Cir. 1999)................................................................................6

*Streamlight, Inc. v. Gindi*,
   No. 18-CV-987 (NG), 2019 WL 6733022 (E.D.N.Y. Oct. 1, 2019) .......................................15

*Tiffany, Inc. v. Luban*,
   282 F. Supp. 2d 123 (S.D.N.Y. 2003)......................................................................19

*Tiramisu Intern. LLC v. Clever Imports LLC*,
   741 F.Supp.2d 1279 (S.D. Fl. 2010) ........................................................................7

**STATUTES**

15 U.S.C. § 1117(a) ...............................................................................1, 16, 17, 18

15 U.S.C. § 1117(b) ...................................................................................19, 20

15 U.S.C. § 1117(b)(1) .............................................................................2, 16, 19

15 U.S.C. § 1117(c) ...........................................................................10, 11, 12, 13

15 U.S.C. § 1117(c)(1)................................................................................1, 3, 5

15 U.S.C. § 1117(c)(2)..................................................................................1, 5

15 U.S.C. § 1127......................................................................................12, 13

Lanham Act.....................................................................................5, 10, 14, 15

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On December 4, 2019, the Court granted New Balance's motion for summary judgment on its federal trademark infringement, trademark dilution, and false designation of origin claims in relation to its famous block N mark (the "N Mark"), as well as its request for statutory damages for New Bunren's trademark counterfeiting under 15 U.S.C. § 1117(c)(1) (the "Order").[1]  (D.I. 74).  On December 18, 2019, the Court issued an Oral Order granting the Parties' request to forego a trial and instead resolve the following issues through supplemental briefing: (a) the amount of statutory damages to which New Balance is entitled and (b) New Balance's entitlement to attorneys' fees and costs.  (D.I. 77).  On January 23, 2020, New Balance filed a Stipulated Dismissal as to its remaining claims that were not resolved by the Order (D.I. 83), and on January 24, 2020, the Court entered a Stipulated Permanent Injunction against New Bunren in connection with its use and registration of the N and NEW BUNREN trademarks (D.I. 84).

## II.      SUMMARY OF ARGUMENT

1.      In a case involving the use of a counterfeit mark, an award of statutory damages between $1,000 and $200,000 per counterfeit mark per type of goods the mark is used in connection with may be awarded to the plaintiff.  15 U.S.C. § 1117(c)(1).  If the court finds that the use of the counterfeit mark was willful, enhanced statutory damages may be awarded up to $2,000,000 per counterfeit mark per type of goods with which the mark is used. 15 U.S.C. § 1117(c)(2).

2.      Additionally, attorneys' fees and costs may be awarded to the prevailing party in an exceptional case (15 U.S.C. § 1117(a)), and, where the defendant engaged in willful

---

[1] New Bunren filed a Motion for Partial Reconsideration of the Order, which has now been fully briefed, and is before the Court for determination.  (D.I. 75, 76, 80, 81).

counterfeiting, absent extenuating circumstances, the Court is ***required*** to award reasonable attorneys' fees (15 U.S.C. § 1117(b)(1)).

3.      Here, New Bunren's counterfeiting was willful, and thus, New Balance is entitled to up to $2,000,000 per counterfeit mark per type of goods with which the mark was used.  New Bunren used counterfeits of four federally registered, incontestable New Balance trademarks.  And New Bunren used counterfeits of these four marks on 21 different types of goods.  Thus, New Balance may be entitled to up to $160,000,000 in statutory damages, although New Balance seeks $840,000—a small fraction of the maximum figure.

4.      In addition, because this is an exceptional case and New Bunren's counterfeiting was willful, New Balance is entitled to an award of its reasonable attorneys' fees and costs.  Indeed, an award of attorneys' fees is ***required*** under 15 U.S.C. § 1117(b)(1).

### III.      FACTUAL BACKGROUND

New Balance is a global company that has offered products under its famous N Mark since 1974.  (D.I. 73 at 1).  New Bunren, through its corporate representative, Shy Fu Pao, registered "N" marks that were virtually identical to New Balance's N Mark.  (D.I. 73 at 2).  New Bunren then advertised, promoted, and offered for sale products bearing these counterfeit "N" marks on its website www.new-bunren.com and on Taobao.com.  (D.I. 73 at 2–3, 16).  New Balance brought this lawsuit over two years ago to protect its valuable rights in the N Mark.  (D.I. 1).

The Court granted New Balance's motion for partial summary judgment in connection with its federal trademark infringement, trademark dilution, and false designation of origin claims (D.I. 73 at 16, 21; D.I. 74 ¶ 2) for its N Mark and held that New Balance was entitled, as a matter of law, to statutory damages under 15 U.S.C. § 1117(c)(1).[2]  (D.I. 73 at 23–25; D.I. 74 ¶ 4).  In

---

[2] Although the Court held that New Balance is entitled to statutory damages, it did not draw any conclusions as to the specific amount of statutory damages to be awarded.  (D.I. 73 at 25).

granting these portions of New Balance's motion, the Court found, among other things, that it is undisputed that:

- New Bunren's "N" mark is virtually identical to New Balance's N Mark. (D.I. 73 at 11);

- When New Bunren applied to register its "N" marks, a flying bird design was apparent, but when New Bunren promoted its products in commerce, the flying bird design was abandoned, thereby leaving New Bunren's "N" mark indistinguishable from New Balance's N Mark. (D.I. 73 at 21);

- New Bunren intended to create an association with New Balance. (D.I. 73 at 20);

- The names of the parties' companies are similar. (D.I. 73 at 20);

- New Bunren's corporate representative confused the names of the parties' companies.  (D.I. 73 at 20);

- New Bunren's corporate representative was unable to distinguish between New Bunren shoes bearing its "N" mark and New Balance shoes bearing its N Mark when presented with images of the shoes side-by-side.  (D.I. 73 at 15);

- Several of the shoes displayed on New Bunren's website are marked with the numbers "1974," the year that New Balance first used its "N" Mark in commerce, and '999,' a three-digit model number that distinguishes New Balance from other leading sports footwear manufacturers that use names instead of numbers to delineate shoe models. (D.I. 73 at 20-1);

- Because 999 follows the same format as the "990…993, 995, and 998" New Balance models, a reasonable consumer could easily conclude that it was a part of the same model line.  (D.I. 73 at 21);

- New Bunren's "N" mark is counterfeit and therefore New Balance is entitled to statutory damages. (D.I. 73 at 24);

- New Bunren's website at http://www.new-bunren.com was set up to sell New Bunren's products bearing its counterfeit "N" mark. (D.I. 73 at 3);

- The New Bunren website was active from 2015-2017 or 2018, and displayed and marketed products bearing New Bunren's "N" mark. (D.I. 73 at 3, 7);

- New Bunren's website repeatedly described its products as an "American Classic," even though its products originate from China… would naturally invoke an association with New Balance as, one time, New Balance ran an ad campaign with the tagline "Classic Then. Classic Now." (D.I. 73 at 20);

- The New Bunren website captioned one photograph with the words "New Balance (China) Sports Goods Co., Ltd." (D.I. 73 at 3);

- The name "New Balance (China) Sports Goods Co., Ltd." appeared on the New Bunren's webpage, which suggests to the average consumer that New Bunren was a division of New Balance based in China. (D.I. 73 at 20);

- New Bunren advertised and distributed its products through the internet, including through Taobao.com (D.I. 73 at 2);

- New Bunren used its counterfeit marks in commerce.  (D.I. 73 at 9);

- New Balance's asserted N Marks are federally registered and have obtained incontestable status. (D.I. 73 at 9, 18, 20);

- New Balance's N Mark is famous.  (D.I. 73 at 18);

- Between July 2014 and October 2016, New Bunren registered U.S. Trademark Nos. 4,568,883; 5,055,943; 4,580,787; 4,585,058; 4,860,914; and 4,878,478 with the U.S. Patent and Trademark Office." (D.I. 73 at 2);

- New Bunren first became aware of New Balance's marks sometime between 2005 and 2010, *i.e.,* before it registered its own "N" mark in 2014. (D.I. 73 at 14);

- New Bunren was given notice of its infringing behavior in at least as early as January 2016 when New Balance filed a cancellation petition with the TTAB. (D.I. 73 at 24); and

- It took a year or more after receiving notice of the cancellation petition for New Bunren to shut down its website and cancel its "N" mark. (D.I. 73 at 24).

The following undisputed evidence was also in the summary judgment record before the

Court:

- New Bunren admitted in interrogatory responses that products bearing its counterfeit marks were **available** at www.new-bunren.com and the Chinese e-commerce website Taobao.com. (D.I. 73 at 7, 16) (citing New Bunren's answers to interrogatories) (emphasis added);

- New Bunren's products were offered for sale at Taobao.com, at least until July 31, 2018, over 2.5 years from the latest that New Bunren was on notice of New Balance's infringement concerns. (D.I. 72-1, Ex. 39 at 66:4–7; 91:12-19; 96:2-7; 147:2–7; D.I. 73 at 24); and

- New Bunren filed sworn Statements of Use with the United States Patent and Trademark Office ("USPTO") declaring under oath that it had used its counterfeit

"N" marks in U.S. commerce in connection with at least 21 different types of goods listed in the Statements of Use. (D.I. 72-1, Exs. 47–52).

New Balance now requests that the Court award it (i) statutory damages in the amount of $840,000 and (ii) reasonable attorneys' fees and costs.

## IV.   ARGUMENT

### A.   Legal Standard

The Court has already determined that New Balance is entitled to statutory damages under 15 U.S.C. § 1117(c)(1) because New Bunren used counterfeits of New Balance's trademarks. (D.I. 73, at 24). The amount of statutory damages permitted under the Lanham Act ranges from $1,000 to $200,000 "per counterfeit mark per type of goods or services sold [or] offered for sale… as the court considers just." 15 U.S.C. § 1117(c)(1). Where the counterfeiting is willful, the maximum award increases to $2,000,000 per mark per type of goods sold or offered for sale. 15 U.S.C. § 1117(c)(2). Thus, there are four variables that need to be considered: (i) whether the counterfeiting was willful, (ii) the number of marks that were infringed, (iii) the number of types of goods with which the counterfeit mark was used, and (iv) the dollar amount per violation.

### B.   New Bunren's Use of Counterfeit Marks Was Willful.

If the Court finds that New Bunren's counterfeiting was willful, enhanced statutory damages may be awarded up to $2,000,000 per counterfeit mark per type of goods with which the mark was used. 15 U.S.C. § 1117(c)(2).

Trademark infringement is willful where the defendant either (1) intends to infringe on the mark holder's rights or (2) deliberately disregards the mark holder's rights "in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *SecuraComm Consulting, Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), superseded by statute on other grounds as stated in *Banjo Buddies, Inc. v. Tenosky*, 399 F.3d 168, 173-6 (3d Cir.

2005). Willfulness involves an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark ... calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *Coach, Inc. v. Fashion Paradise, LLC,* No. 10-4888, 2012 WL 194092, at *6 (D.N.J. Jan. 20, 2012). Moreover, "[w]illfulness can be inferred by the fact that defendant continued infringing behavior after being given notice." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F.Supp.2d 567, 583 (E.D. Pa. 2002).

Here, there is overwhelming evidence to support a finding that New Bunren acted willfully, and therefore, that New Balance is entitled to enhanced statutory damages.  First, New Bunren continued its infringing activity for at least two and half years after being given notice of New Balance's infringement concerns.  Second, New Bunren offered its counterfeit goods for sale on the Internet, enabling wide dissemination of the infringing products.  Third, New Bunren traded on the extremely strong goodwill cultivated by New Balance in the footwear and apparel marketplace by using virtually identical marks on virtually identical goods to deliberately deceive customers.

### 1.    New Bunren Continued Marketing and Offering Counterfeit Goods After Receiving Notice from New Balance of its Infringing Conduct.

As a threshold matter, New Bunren was on notice of New Balance's infringement concerns since at least as early as January 2016 when New Balance filed cancellation proceedings in the TTAB. (D.I. 73 at 24).  The Court noted that it took a year or more from this first notice for New Bunren to shut down its website and cancel its registrations.  *Id.*  Moreover, in her deposition on July 31, 2018, Ms. Pao stated that counterfeit product was offered for sale (as of that date) for distribution in the U.S. on Taobao.com, more than two and half years after the latest possible notice date of January 2016.  (D.I. 72-1, Ex. 39 at 66:4–7; 91:12-19; 95:22-96:7; 147:2–7).  These delays alone are a sufficient basis for finding willfulness. *See Coach, Inc. v. Ocean Point Gifts*, No. 09-

4215, 2010 WL 2521444, at *3 (D.N.J. June 14, 2010) ("The alleged willfulness of the Defendant is confirmed by evidence showing that the Defendant continu[ed] to sell the handbags nearly three months after being served notice of the Complaint."); *Veit,* 211 F.Supp.2d at 583 (finding that defendant's conduct was willful where defendant continued to infringe for over two years after being put on notice); *Platypus Wear, Inc. v. Bad Boy Club, Inc.,* No. 08-02662, 2009 WL 2147843, at *6 (D.N.J. 2009) (concluding that defendant's conduct was willful where defendant continued to infringe on plaintiff's marks for 14 months after receiving notice); *Howards v. Laws,* No. 13-0957, 2014 WL 3925536, at *10 (D.N.J. 2014) (determining that where defendant continued infringing behavior for 6 months after receiving notice, defendant's conduct was willful); *Bekins Holding Corp. v. BGT Trans, Inc.,* No. 09-08982, 2010 WL 11597623, at * (C.D. Cal. 2010) (holding that defendant's conduct was willful where defendant continued to infringe on plaintiff's marks for approximately 12 months after receiving notice); *Tiramisu Intern. LLC v. Clever Imports LLC*, 741 F.Supp.2d 1279, 1289 (S.D. Fl. 2010) (finding that where defendant continued infringing activity for a little over 2 years after receiving notice, such conduct was willful).  New Bunren has provided no explanation (nor can it) for why it continued to offer counterfeit products for sale on the internet well after receiving notice of its infringing conduct.  This alone is a sufficient basis for finding willfulness here.

### 2.      New Bunren's Marketing and Offering of the Counterfeit Goods on the Internet was for Purposes of Wide Dissemination of Such Goods and Warrants Enhanced Statutory Damages.

District courts in the Third Circuit have found that where a defendant sells counterfeit products on the Internet, rather than at a localized storefront, for example, the wide dissemination enabled by the world wide web constitutes willful conduct and warrants enhanced statutory damages.  *See, e.g., Chanel Inc., v. Matos*, 133 F.Supp.3d 678, 688 (D.N.J. Aug. 13, 2015); *Coach, Inc. v. Bag Place, Co.*, No. 10-6226, 2012 WL 13028160, at *10 (D.N.J. May 7, 2012) ("the sale

here took place in a single store, as opposed to the Internet, where the potential for unbridled infringement is of far more concern."); *Louis Vuitton Malletier, S.A. v. Mosseri*, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009) (holding that defendant acted willfully in advertising and selling counterfeit products as genuine Louis Vuitton products on defendant's website).

Here, New Bunren made its counterfeit products available on its website, www.new-bunren.com, and at Taobao.com.  (D.I. 73 at 2, 3, 7; D.I. 72-1, Ex. 39 at 66:4–7; 91:12-19; 96:2-7; 147:2–7).  As in other cases involving the offerings of counterfeit goods on the Internet, use of this marketing and sales channel allowed for the wide dissemination of counterfeit products and warrants awarding New Balance enhanced statutory damages based on New Bunren's willful conduct.

   **3.    New Bunren Traded on the Goodwill of New Balance by Using Virtually Identical Marks on Virtually Identical Products.**

Where a defendant's infringing goods are virtually identical to those offered for sale under a strong and established mark, it is impossible for that defendant to claim that they lacked knowledge that plaintiff's rights were being infringed.  *Microsoft Corp. v. Gonzales*, No. 06-4331, 2007 WL 2066363, at *5 (D.N.J. July 13, 2007); *Chanel, Inc. v. Gordashevsky*, No. 05-5270, 2007 WL 316433, at *5 (D.N.J. Jan 29, 2007).  As a result, courts have held that defendant's use of virtually identical marks on virtually identical products constitutes willful infringement.  *Microsoft Corp.*, 2007 WL 2066363, at *5; *Gordashevsky*, 2007 WL 316433, at *5 (finding defendant's conduct willful where defendant sold counterfeit products of a well-known, commercially popular brand on four Internet websites because it was highly unlikely that defendant engaged in such action without knowing that plaintiff's rights were being infringed); *N.V.E., Inc. v. Day,* No. 07–4283, 2009 WL 2526744, at *3 (D.N.J. Aug.18, 2009) (awarding enhanced statutory damages where defendants used the Internet to sell products with identical or deceptively similar marks to

plaintiff's trademarks for their dietary and nutritional supplements); *Gordashevsky*, 2007 WL 316433, at *5 (D.N.J. Jan 29, 2007).

In this case, the Court found that New Bunren's "N" mark is "virtually identical" and used on "virtually identical products" to those of New Balance. (D.I. 73 at 11). New Bunren's website also marketed the products in ways that sought to trade off the goodwill cultivated by New Balance. For example, the website described New Bunren as an "American Classic." *Id.* at. 3, 20. The website once included the language, "New Balance (China) Sports Goods Co., Ltd." *Id.* at 3, 20. Several of the shoes displayed on New Bunren's website were marked with the numbers "1974," the year that New Balance first introduced its N Mark to the market, and a three-digit number, like "999," the shoe model branding that distinguishes New Balance from other leading sports footwear manufacturers that use names instead of numbers to identify their shoe models. (D.I. 73 at 20-21). Moreover, the parties' company names are similar. (D.I. 73 at 20). And, indeed, based on all of these uncontested facts, the Court has already found that "New Bunren intended to create an association with New Balance." (D.I. 73 at 20).

Given the use of virtually identical marks on virtually identical products, and by otherwise attempting to create an association with New Balance and its famous N Mark, it is readily apparent that New Bunren sought to trade on New Balance's significant goodwill. This outright copy-catting more than satisfies the willfulness standard required for enhanced statutory damages.

## C.   New Bunren's Counterfeit Mark Infringed Four New Balance Trademarks.

New Balance owns four federal registrations for its famous N Mark and thus New Bunren counterfeited *four* New Balance marks. In calculating statutory damages for trademark counterfeiting, the Lanham Act requires that the statutory damages be assessed "per counterfeit mark." 15 U.S.C. § 1117(c). "[P]er counterfeit mark" refers to the number of plaintiff's registered marks that are counterfeited by the defendant. *See, e.g., Chanel, Inc. v. Matos*, 133 F. Supp. 3d

678, 687–88 (D.N.J. 2015) (multiplying statutory damages by three for the number of plaintiff's trademarks counterfeited); *Louis Vuitton Malletier, S.A. v. Mosseri*, Civil No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009) (multiplying statutory damages by 27 based on number of plaintiff's infringed trademark registrations); *Coach, Inc. v. Ocean Point Gifts*, Civil Action No. 09-4215 (JBS), 2010 WL 2521444, at *7 (D.N.J. June 14, 2010) (multiplying statutory damages by five based on the number of plaintiff's infringed trademark registrations); *Coach, Inc. v. Fashion Paradise, LLC*, Civil No. 10-4888 (JBS/KMW), 2012 WL 194092, at *7 (D.N.J. Jan. 20, 2012) (multiplying statutory damages by three based on the number of plaintiff's infringed trademark registrations); *Coach, Inc. v. Bags & Accessories*, Civil Action No. 10-2555 (JBS-JS), 2011 WL 1882403, at *7 (D.N.J. May 17, 2011) (multiplying statutory damages by two based on the number of plaintiff's infringed trademark registrations).

Here, New Balance owns at least four federal registrations for the N Mark that New Bunren counterfeited:

| Mark | Reg. No. | Reg. Date | First Use in U.S. Commerce |
|---|---|---|---|
| *N* | 3,282,106 | Aug. 21, 2007 | Jan. 2, 1977 (Class 25) |
| *N* | 4,477,442 | Feb. 4, 2014 | Jan. 1, 1996 (Class 25) |
| (shoe logo) | 1,308,133 | Dec. 4, 1984 | Jan. 2, 1977 (Class 25) |
| (shoe logo) | 1,344,589 | June 25, 1985 | Feb. 1, 1979 (Class 25) |

(D.I. 72-1, Exs. 3–5, 8).  All four of these registrations cover New Balance's iconic block N Mark and are incontestable.  The '106 registration covers athletic footwear in International Class 25.  (D.I. 72-1, Ex. 5).  The '442 registration covers athletic apparel, namely, shirts, pants, jackets,

footwear, hats and caps, athletic uniforms, and sweatshirts, in International Class 25.  (D.I. 72-1, Ex. 8).  The '133 and '589 registrations cover athletic footwear in International Class 25.  (D.I. 72-1, Exs. 3, 4).

The Court found that New Bunren used its counterfeit "N" marks in connection with products virtually identical to New Balance's products, i.e., those products covered in the above-referenced registrations.  (D.I. 73 at 11).  Therefore, because New Balance owns four registrations for its N Mark that New Bunren counterfeited, the multiplier for the "per counterfeit mark" factor under § 1117(c) should be ***four***.

## D.     New Bunren Used Its Counterfeit Mark In Connection with 21 Types of Goods.

Based on New Bunren's sworn statements to the USPTO that it used its counterfeit "N" marks in commerce on or in connection with an extensive collection of apparel and shoes, the Court should multiply statutory damages by the ***21*** types of goods offered by New Bunren. Statutory damages for trademark counterfeiting are measured "per type of goods or services sold, offered for sale, or distributed . . . ."  15 U.S.C. § 1117(c).  Courts count one type of good as separate from another type of good if the "functional purpose of the product[s]" are different.  *A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560, at *10 (E.D.N.Y. Apr. 19, 2016) (holding that scalpels, scissors, forceps, retractors, and probes were all different types of goods); *see also Chanel*, 133 F. Supp. 3d at 688 (holding that pants and shirts are different types of goods).

A court may use the list of goods recited in trademark application filings to count the types of goods for purposes of calculating statutory damages.  *See Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010) (relying on USPTO filings to compute statutory damages and stating that "defendant's own registration application to the PTO demonstrate[d] that each type of good was identified differently, treated separately, and thus distinguished from one

another by defendant").    In connection with its federal trademark applications, New Bunren submitted Statements of Use in which Ms. Pao declared under oath that the  "N" mark was "in use in commerce on or in connection with all of the goods/services" identified in the application(s). (D.I. 72-1, Exs. 47–52).  As the Court noted in its Order, Section 1127 "sets the standard for a mark to qualify for protection or registration."  (D.I. 73 at 6).  Under Section 1127, a mark is used in commerce when "it is placed in any manner on the goods or their containers or the displays associated therewith . . . and the goods are ***sold or transported in commerce***."  15 U.S.C. § 1127 (emphasis added).  By filing Statements of Use for its "N" mark applications, New Bunren represented under oath that it *sold* or *transported* in commerce each of the 21 types of goods listed in these filings.  (D.I. 72-1, Exs. 47-52).

Specifically, the Statements of Use demonstrate that New Bunren identified differently, treated separately, and thus distinguished from one another the following 21 different types of goods offered under its counterfeit "N" mark:

1.  Hats
2.  Socks
3.  Gloves
4.  Belts
5.  Shoes
6.  Bodysuits
7.  Scarves
8.  Dance tops
9.  Dance bottoms
10. Swimsuits
11. T-shirts
12. Polo shirts
13. Short-sleeve shirts
14. Long-sleeve shirts
15. Shorts
16. Pants
17. Sweaters
18. Pullovers
19. Tights
20. Jackets
21. Hooded sweatshirts

Therefore, the "type of goods" multiplier for calculating statutory damages should be ***21***.[3]

---

[3] In addition to the goods listed in its Statements of Use, the specimens New Bunren filed in support of its Statements of Use show the counterfeit mark being used on two types of goods, shoes and polo shirts.  (D.I. 72-1, Exs. 49-52).  Moreover, documents obtained in discovery demonstrate that New Bunren used its counterfeit "N" mark on at least shoes, sweaters and polo shirts. (D.I. 72-1, Exs. 53-58).

Accounting for both the number of New Balance's marks infringed (4) and the number of types of goods with which New Bunren used its counterfeit mark (21), the statutory damages amount per infringement should be multiplied by *84*.

**E.    New Balance is Entitled to an Award of $840,000 in Statutory Damages.**

Courts have awarded a wide range of statutory damages, and the amount and basis for each award is very fact-specific. Because New Bunren's counterfeiting was willful, New Balance is entitled to an award of up to $2 million per counterfeit mark per type of goods distributed or offered for sale. If the Court finds that New Bunren's conduct was not willful, New Balance is still entitled to an award between $1,000 and $200,000 per violation.

Although the Lanham Act affords courts wide discretion in determining the amount of statutory damages awarded for trademark counterfeiting, the statute itself does not offer guidance on how that discretion should be exercised. As a result, courts often turn to cases awarding statutory damages under copyright law as a guide. *See, e.g.*, *Delta Air Lines, Inc. v. Fly Tech, LLC*, 2018 WL 1535231, at *3–4 (D.N.J. Mar. 29, 2018). In so doing, courts consider the following factors:

- Expenses saved and the profits reaped by the defendant;
- Revenues lost by the plaintiff;
- Value of the intellectual property;
- Deterrent effect on others besides defendant;
- Whether the defendant's conduct was innocent or willful;
- Whether the defendant has cooperated in providing particular records from which to assess the value of the infringing material; and
- Potential for discouraging the defendant.

*Id.*; *Platypus Wear, Inc. v. Bad Boy Club, Inc.*, 2009 WL 2147843, at *7 (D.N.J. July 15, 2009); *Coach, Inc. v. Fashion Paradise, LLC*, 2012 WL 194092, at *8 (D.N.J. Jan. 20, 2012). In the trademark context, courts have also considered the following factors:

- 13 -

- Point of sale of the infringing goods (internet = higher damages);
- The monetary value of the item counterfeited;
- The size of the counterfeiting operation; and
- Whether there exists any evidence of actual sales made by defendants.

*See, e.g.*, *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 688 (D.N.J. 2015); *Delta Air Lines*, 2018 WL 1535231, at *4 (D.N.J. Mar. 29, 2018); *Northeastern Lumber Mfrs. Ass'n v. Sky of New York Corp.*, 2018 WL 1605150, at *5 (D.N.J. Apr. 3, 2018).

Several of these factors weigh in favor of a significant per-violation award for New Balance.  The unique facts of this case (and the high multiplier of 84) counsel toward an award lower than the maximum allowable, but still significant enough to compensate New Balance and deter New Bunren and others from intentionally infringing extremely valuable intellectual property owned by New Balance and others.  *See Streamlight, Inc. v. Gindi*, No. 18-CV-987 (NG), 2019 WL 6733022, at *17 (E.D.N.Y. Oct. 1, 2019) (holding that an award of attorneys' fees was appropriate to "further[] the goals of the Lanham Act, including deterrence of similarly willful conduct both by defendants and other possible infringers").  While New Bunren's business operation may have been under-developed, its intent was clear, and its copying of New Balance was so egregious that New Bunren's own corporate representative could not distinguish between the parties' branding on footwear.  The value of New Balance's counterfeited intellectual property is immense.  *See* (D.I. 73 at 13).  And a significant award will have a strong deterrent effect, which is in the interest of brand owners and the consuming public alike.

Recent awards of statutory damages in this Circuit include awards of $5,000, $10,000, and $30,000 per violation.  *See Coach, Inc. v. Paula's Store Sportwear LLC*, Civil Action No. 13-3263 (SRC), 2014 WL 347893, at *4 (D.N.J. Jan. 31, 2014); *Coach, Inc. v. Bags & Accessories*, Civil Action No. 10-2555 (JBS-JS), 2011 WL 1882403, at *7 (D.N.J. May 17, 2011); *Coach, Inc. v.*

*Fashion Paradise, LLC*, Civil Action No. 10-4888 (JBS/KMW), 2012 WL 194092, at *7 (D.N.J. Jan. 20, 2012).  Here, New Balance should be awarded at least $10,000 per counterfeit mark per number of types of goods offered for sale.  Based on a multiplier of 84 (as explained above), this equates to a total award of $840,000.  This represents a per-violation amount far lower than the $2 million maximum and is much closer to the low-end of the statutory range for non-willful counterfeiting ($1,000 to $200,000 per violation).  This is a reasonable and equitable request by New Balance in light of the uncontested facts of the case and the Court's findings.

**F.       New Balance is Entitled to Its Reasonable Attorneys' Fees and Costs.**

New Balance is entitled to recover its attorneys' fees and costs from New Bunren for litigating this action.  The Court may award attorneys' fees and costs to a prevailing plaintiff if the case is exceptional and/or the defendant engaged in willful counterfeiting pursuant to 15 U.S.C. §§ 1117(a) or 1117(b), respectively.   Indeed, absent extenuating circumstances, the Court is ***required*** to award reasonable attorneys' fees (15 U.S.C. § 1117(b)(1)) where the defendant engaged in willful counterfeiting.   Here, New Balance is clearly entitled to recover its attorneys' fees and costs because this case is both exceptional and New Bunren engaged in willful counterfeiting.

> **1.       This Is an Exceptional Case Because New Bunren's Counterfeiting Was Willful and Its Arguments Lacked Substantive Strength.**

The Court may award New Balance, as the undisputed prevailing party in this case, its reasonable attorneys' fees and costs because this is an "exceptional case."  15 U.S.C. § 1117(a).  Courts routinely award attorneys' fees under the "exceptional case standard" under § 1117(a) where the defendant willfully counterfeited or infringed the plaintiff's trademark.  *See, e.g.*, *Audi AG v. Posh Clothing, LLC*, Civil Action No. 18-14254, 2019 WL 1951166, at *7 (D.N.J. May 2, 2019); *Delta Air Lines, Inc. v. Fly Tech, LLC*, Civil Action No. 16-2599, 2018 WL 1535231, at *5

(D.N.J. Mar. 29, 2018); *Cartier Int'l AG v. Daniel Markus, Inc.*, Civil Action No. 10-1459 (JLL), 2011 WL 3881498, at *7 (D.N.J. Sept. 2, 2011); *Holt's Co. v. Hoboken Cigars, LLC*, Civ. No. 09-3782 (WJM), 2010 WL 4687843, at *4 (D.N.J. Nov. 10, 2010) (collecting cases).  As detailed above, New Bunren willfully counterfeited New Balance's famous N Mark.

Additionally, a case is exceptional if either (1) it "stands out from others with respect to the substantive strength of the party's litigation position (considering both the governing law and the facts of the case)" or (2) because of "the unreasonable manner in which the case was litigated." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314 (3d Cir. 2014) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)).  This case is exceptional at least under the first prong, as New Bunren's litigation position on several key substantive issues was extremely weak.

To determine if a case stands out with respect to the substantive strength of the party's litigation position, courts consider, among other things, the objective unreasonableness of the party's arguments (factual and legal).  *Octane Fitness*, 572 U.S. at 554 n.6; *River Light V, L.P. v. Lin & J Int'l, Inc.*, No. 13cv3669 (DLC), 2015 WL 3916271, at *10 (S.D.N.Y. June 25, 2015). Although willfulness can be a determinative factor in awarding attorneys' fees under § 1117(a), the Court may also award attorneys' fees where a party's arguments were objectively unreasonable such that there was a significant disparity in the merits of each party's litigation positions.  *See Renna v. County of Union, N.J.*, Civil Action No. 11-3328 (KM), 2015 WL 93800, at *8 (D.N.J. Jan. 7, 2015) (granting plaintiff's application for attorneys' fees even where defendant was not found to have acted in bad faith, fraudulently, or maliciously).

In this case, the disparity between New Balance's position and New Bunren's is substantial. Anyone looking at New Balance's world-famous N Mark and New Bunren's counterfeit mark

could see how paper-thin New Bunren's arguments against the infringement claims were.  (*See*, e.g., D.I. 73 at 12, 16 (holding that the parties' marks are "virtually identical" and used "on virtually identical products" and noting that New Bunren's own corporate representative was unable to distinguish between the parties' marks)).  New Bunren seemed to admit this obvious weakness, choosing to address only a few of the ten likelihood of confusion factors in its defense. (D.I. 73 at 10; D.I. 63 at 11–12).

More particularly, New Bunren asserted that its prior USPTO registrations somehow absolved it of liability, failing to cite any legal authority in support of its claim.  (D.I. 73 at 25 n.9; D.I. 63 at 4).  Moreover, in a futile effort to distinguish between the parties' marks (something New Bunren's corporate representative was unable to do), New Bunren attempted to argue (albeit not in its answering brief but in its response to New Balance's Statement of Uncontested Facts) that New Bunren's "N" is distinct because it includes a "flying bird" design.  (D.I. 64 at [para] 3; see also D.I. 73 at 11).  But the Court found that the parties' "marks are virtually identical" and "the flying bird is so inconspicuous, it leaves the overall impression that [the parties' marks] are identical . . . ."  (D.I. 73 at 10, 11).  Indeed, in finding that New Bunren attempted to create an association with New Balance, the Court found that, "most tellingly," when New Bunren applied to register its "N" mark, a flying bird design was apparent, "but when New Bunren promoted its products in commerce, the flying bird design was abandoned, thereby leaving New Bunren's 'N' mark indistinguishable from New Balance's 'N' marks." (D.I. 73 at 21).

Finally, New Bunren's defense to all of New Balance's federal trademark claims rested on its allegation that it never used the mark in commerce.  But this "argument" was squarely contradicted by New Bunren's own interrogatory answers (D.I. 72-1 Ex. 38, at Nos. 9, 10, 12), Ms. Pao's deposition testimony (D.I. 72-1, Ex. 39 at 66:4–7; 91:12–19; 96:2–7; 147:2–7), and its

sworn Statements of Use filed with the USPTO (D.I. 72-1, Exs. 47–52). Because New Bunren's arguments in this case were objectively unreasonable, this is an exceptional case, and New Balance is entitled to attorneys' fees and costs under § 1117(a). *See Renna*, 2015 WL 1815498, at \*3–4 (granting prevailing party its attorneys' fees where losing party could not offer any legal support for its claim that its mark that was determined unregistrable by the USPTO was otherwise subject to trademark protections).

  **2.**  **New Bunren's Willful Counterfeiting Mandates an Award of Attorneys' Fees.**

  Attorneys' fees are also available to successful plaintiffs in trademark counterfeiting cases where the defendant "intentionally us[ed] a mark . . . knowing such mark . . . [was] a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services." 15 U.S.C. § 1117(b)(1). Where, as here, the trademark counterfeiting was willful, Courts routinely award plaintiffs their attorneys' fees under § 1117(b). *See, e.g.*, *Chanel, Inc. v. Guetae*, Civil Action No. 07-3309 (JAG), 2009 WL 1653137, at \*5 (D.N.J. June 8, 2009); *Chanel, Inc. v. ENS Jewelry, Inc.*, Civil Action No. 08-2005 (JAG), 2009 WL 1298406, at \*6 (D.N.J. May 8, 2009); *Tiffany, Inc. v. Luban*, 282 F. Supp. 2d 123, 125 (S.D.N.Y. 2003); *Rolex Watches U.S.A., Inc. v. Jones*, No 99 CIV. 2359(DLC)(FM), 2002 WL 59354, at \*6 (S.D.N.Y. Apr. 17, 2002). Indeed, as the Court has already noted, absent extenuating circumstances, the Court is required to award reasonable attorneys' fees for intentional and knowing counterfeiting under 15 U.S.C. § 1117(b)(1). (*See* D.I. 73 at 25).

  Here, there are no extenuating circumstances that weigh against an award of fees. New Bunren admits that it knew of New Balance's N Marks sometime between 2005 and 2010. (D.I. 73 at 15 (citing D.I. 57-1, Ex. C at No. 4)). Therefore, New Bunren knew of New Balance's N Mark well before New Bunren applied to register its counterfeit marks (2012) and before it began

using its counterfeit mark in commerce (2014).  (D.I. 73 at 15; D.I. 72-1, Exs. 43, 44; D.I. 72-1, Exs. 49, 50).  And, New Bunren was on notice of New Balance's infringement concerns for well over a year before shutting down its website and cancelling its registrations, and it continued to offer counterfeit products for sale on Taobao.com for at least two and a half years after receiving notice.

It stretches credulity to believe that New Bunren's use of a virtually identical mark on virtually identical products, despite knowing of New Balance's famous N Mark and being on notice of New Balance's infringement concerns, was anything but knowing and intentional. Therefore, New Balance should be awarded its attorneys' fees under § 1117(b).

## V.   CONCLUSION

For all of the foregoing reasons, New Balance respectfully requests that the Court enter an Order awarding to New Balance (1) $840,000 in statutory damages and (2) its attorneys' fees and costs.

Dated:  February 5, 2020

OF COUNSEL:

Thomas L. Holt *(PHV)*
Jeremy L. Buxbaum *(PHV)*
Perkins Coie LLP
131 South Dearborn Street, Suite 1700
Chicago, IL  60603-5559
Telephone:  312.324.8400
Facsimile:  312.324.9400
Email: THolt@perkinscoie.com
Email: JBuxbaum@perkinscoie.com

*/s/ Arthur G. Connolly, III*
Arthur G. Connolly, III (#2667)
Ryan P. Newell (#4744)
Stephanie Smiertka Riley (#5803)
Connolly Gallagher LLP
1201 North Market Street
20th Floor
Wilmington, Delaware 19801
T: (302) 757-7300
F: (302) 757-7299
Email: aconnolly@connollygallagher.com
Email: rnewell@connollygallagher.com
Email: sriley@connollygallagher.com

***Attorneys for Plaintiff New Balance Athletics, Inc.***