IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

NEW BALANCE ATHLETICS, INC.,          )
                                      )
                  Plaintiff,          )
                                      )
            v.                        )     C.A. No. 17-1700 (MN)
                                      )
USA NEW BUNREN INTERNATIONAL          )
CO. LIMITED LLC,                      )
                                      )
                  Defendant.          )

## **<u>MEMORANDUM OPINION</u>**


Arthur G. Connolly, III, Ryan P. Newell, Stephanie Smiertka Riley, CONNOLLY GALLAGHER LLP, Wilmington, Delaware, Thomas L. Holt, Jeremy L. Buxbaum, PERKINS COIE LLP, Chicago, Illinois.  Attorneys for Plaintiff.

Dennis J. Butler, John D. Simmons, PANITCH SCHWARZE BELISARIO & NADEL LLP, Wilmington, Delaware, Timothy T. Wang, NI, WANG & MASSAND, PLLC, Dallas, Texas.  Attorneys for Defendant.


September 18, 2020
Wilmington, Delaware

NOREIKA, U.S. DISTRICT JUDGE

On cross-motions for summary judgment, Plaintiff New Balance Athletics, Inc. ("New Balance") sought, among other things, a ruling that is was entitled to statutory damages and attorneys' fees from Defendant USA New Bunren International Co. Limited LLC ("New Bunren") pursuant to 15 U.S.C. § 1117. (D.I. 52; D.I. 58). On December 4, 2019, the Court granted New Balance's motion for statutory damages under § 1117(c)(1), but denied without prejudice its motion for statutory damages under § 1117(c)(2) and attorneys' fees under § 1117(a) or (b). (D.I. 73 at 22-25; D.I. 74). For reasons stated in the opinion, the Court did not determine at that time the amount of statutory damages to award.

On December 18, 2019, the Court granted the parties' request to forego a trial and instead resolve the two remaining issues through supplemental briefing. The issues are: (i) the amount of statutory damages to which New Balance is entitled and (ii) whether New Balance is entitled to attorneys' fees and costs. (D.I. 77). The parties have filed supplemental briefing. (D.I. 85; D.I. 86; D.I. 87). For the following reasons, the Court will award $504,000 in statutory damages but nothing in attorneys' fees and costs.

## I.   DISCUSSION

### A.    Statutory Damages

As stated previously, the Court has already determined that New Bunren is liable for statutory damages under 15 U.S.C. § 1117(c). (D.I. 73 at 24). Thus, the only issue left to decide is the amount of damages to award.[1]  Section 1117(c) authorizes statutory damages of "not less

---

[1]     New Bunren spent the bulk of its supplemental brief re-arguing liability. (*See* D.I. 86). The time, however, for New Bunren to argue that it is not liable for statutory damages because advertising and promotion are not, as a matter of law, "offers for sale" under § 1117(c) was in the cross-motions for summary judgement. Indeed, New Bunren argued at that time that no offers for sale took place and lost. (D.I. 53 at 10; D.I. 73; *see also*

than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c)(1). If the defendant's infringement was willful, then the maximum award is trebled to $2 million per mark per type of good. 15 U.S.C. § 1117(c)(2). The specific dollar amount within the applicable range is the amount "the court considers just." 15 U.S.C. § 1117(c). Thus, to calculate the total amount of statutory damages, the court, in an exercise of its discretion, sets a dollar amount per violation and then multiplies that amount by three variables: (i) the number of counterfeit marks, (ii) the number of types of goods, and (iii) an appropriate amount if the infringement was willful. Each variable is addressed in turn.

### 1.    Number of Marks

Several courts in this circuit have determined the number of "counterfeit marks" by looking to the number of plaintiff's registered marks that were counterfeited by defendant. *See*, *e.g*., *Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 687–88 (D.N.J. 2015) (multiplying statutory damages by three for the number of plaintiff's infringed trademark registrations); *Coach, Inc. v. Ocean Point Gifts*, C.A. No. 09-4215 (JBS), 2010 WL 2521444, at *7 (D.N.J. June 14, 2010) (multiplying statutory damages by five based on the number of plaintiff's infringed trademark registrations); *see also* D.I. 85 at 9-10 (collecting cases). New Bunren does not dispute that this is the correct way to determine the number of counterfeit marks. New Bunren also does not dispute that the number of New Balance's counterfeited trademark registrations is four.  (D.I. 86 at 19-20). Accordingly, the Court will use four marks in its calculation.

---

D.I. 95 (Memorandum Order denying motion for reargument). For these reasons, the Court will not consider arguments in the supplemental brief that do not address the limited issue before it.

## 2.    Number of Type of Goods

Statutory damages are measured "per type of goods or services sold, offered for sale, or distributed." 15 U.S.C. § 1117(c). One type of good is counted separately from another type of good if the "functional purpose of the product[s]" are different. *A.M. Surgical, Inc. v. Akhtar*, No. 15-CV-1318 (ADS)(SIL), 2016 WL 11543560, at *10 (E.D.N.Y. Apr. 19, 2016) (holding that scalpels, scissors, forceps, retractors, and probes were all different types of goods); *see also Chanel*, 133 F. Supp. 3d at 688 (holding that shirts and pants are different types of goods).

A court may use the list of goods recited in a defendant's trademark application to determine the number of types of goods, because "defendant's own registration application to the PTO demonstrates that each type of good was identified differently, treated separately, and thus distinguished from one another by defendant." *Rolls-Royce PLC v. Rolls-Royce USA, Inc*., 688 F. Supp. 2d 150, 159 (E.D.N.Y. 2010). Here, New Bunren's Statement of Use for its "N" mark application listed 21 different types of goods: hats, socks, gloves, belts, shoes, bodysuits, scarves, dance tops, dance bottoms, swimsuits, t-shirts, polo shirts, short-sleeve shirts, long-sleeve shirts, shorts, pants, sweaters, pullovers, tights, jackets, and hooded sweatshirts.[2]

New Bunren does not dispute that a court may rely on a Statement of Use to determine the number of type of goods. New Bunren also does not dispute that each of the 21 goods in its Statement of Use should be counted as a different type. Although several goods appear to be cumulative, for example t-shirts, polo shirts, and short sleeve shirts, or pullovers and hoodies, New

---

[2]    In the Statement of Use, New Bunren also declared under oath that the "N" mark was "in use in commerce on or in connection with all of the goods/services" identified in the application. (D.I. 72-1, Exs. 47–52). For purposes of registration, a mark is used "in commerce" when "the goods are sold or transported in commerce." 15 U.S.C. § 1127. Thus, by filing the Statement of Use for its "N" mark applications, New Bunren represented under oath that it sold or transported in commerce each of the 21 types of goods listed in these filings.

Bunren's Statement of Use and the absence of any argument to the contrary demonstrate that it considers these goods to be separate types. *See Rolls-Royce*, 688 F. Supp. 2d at 159 (counting 20 different categories of product even though most of them were different kinds of shirts because defendant's registration application demonstrates that each type of good was identified differently by defendant). Accordingly, the Court will calculate damages using 21 types of goods.

### 3.   Willfulness

Willful trademark infringement requires "an intent to infringe or a deliberate disregard of a mark holder's rights." *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), superseded by statute on other grounds as stated in *Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 173–76 (3d Cir. 2005). New Balance argues that willfulness can be inferred here because: (1) New Bunren continued its infringing activity after being given notice of New Balance's infringement concerns; (2) New Bunren used virtually identical marks on virtually identical goods to deliberately deceive customers; and (3) New Bunren offered its counterfeit goods for sale on the Internet, enabling wide dissemination of the infringing products. (D.I. 85 at 6).

The first two arguments merit a finding of willfulness.[3] "Willfulness can be inferred by the fact that a defendant continued infringing behavior after being given notice." *Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583 (E.D. Pa. 2002). New Bunren was put on notice of its infringing activity in January 2016, when New Balance filed a cancellation petition with the Trademark Trial and Appeal Board. (D.I. 85 at 6; D.I. 60 ¶ 40; D.I. 64 ¶ 40). But New

---

[3]     The Court is not persuaded by New Balance's argument that use of the Internet, as opposed to a brick and mortar store, is grounds to find willfulness. (D.I. 85 at 7-8). In the cited cases, courts increased the amount of damages when the Internet allowed for more widespread dissemination of the counterfeit products, but the courts did not state that use of the Internet meant the defendant's actions were willful. *See*, *e.g*, *Chanel*, 133 F. Supp. 3d at 688.

4

Bunren nevertheless continued its infringing activity.  By New Bunren's own admission, it continued to operate its website, www.new-bunren.com, until at least 2017, at least a year after it received notice.  (D.I. 64 ¶ 33).  New Bunren did not voluntarily withdraw its counterfeit registrations until June 2018.  (*Id*. ¶ 41).  And New Bunren admitted – multiple times – that its counterfeit products continued to be offered for sale and distribution in the U.S. until at least July 31, 2018.  (D.I. 72-1, Ex. 39 at 66:4–7; 91:12–19; 95:22–96:7; 147:2–7).

A court may also find willfulness if a defendant uses counterfeit marks that are "identical to . . . strong and established marks," because such actions demonstrate a defendant's "desire and purpose to trade upon [a plaintiff's] goodwill."  *Chanel, Inc. v. Gordashevsky*, C.A. No. 5-5270(RBK), 2007 WL 316433, at *5 & *5 n.4 (D.N.J. Jan. 29, 2007); *N.V.E., Inc. v. Day*, 2009 WL 2526744, at *3 (D.N.J. Aug. 18, 2009) (finding that defendants "acted willfully because they deliberately deceived consumers and traded upon [plaintiff's] good will by selling counterfeit versions of [plaintiff's] products bearing [plaintiff's] trademarks").  The Court has already found that New Balance's "N" mark is strong and established, indeed famous.  (D.I. 73 at 12, 18).  And, New Bunren's "N" mark is identical and appears on identical products.  (*Id*. at 11-12).  Given that New Bunren used identical marks on identical products and continued its infringing activity for several months after receiving notice, the Court finds that New Bunren's trademark infringement was willful.

### 4.    Exercise of Discretion – Dollar Amount Per Violation

"The Court possesses wide discretion in determining the proper and just amount of damages."  *Coach, Inc. v. Quisqueya Agency Inc*., Civ. No. 13-3261 (CCC), 2014 WL 3345434, at *2 (D.N.J. July 8, 2014).  In the exercise of that discretion, the Court observes that New Bunren

is not a particularly sophisticated operation.[4]  It had a somewhat obscure market presence for a relatively short period of time.[5]  And, there is no evidence in the record that New Bunren made any profits from its scheme.  For these reasons, a low dollar amount per violation is likely to have a meaningful impact on New Bunren and, therefore, act as an effective deterrent.  *See*, *e.g.*, *Delta Air Lines, Inc. v. Fly Tech, LLC*, C.A. No. 16-2599, 2018 WL 1535231, at \*4 (D.N.J. Mar. 29, 2018) (stating that "a large award is less appropriate where there is limited evidence of large-scale operations or profits"); *Holt's Co. v. Hoboken Cigars, LLC*, Civ. No. 09-3782 (WJM), 2010 WL 4687843, at \*3 (D.N.J. Nov. 10, 2010) ("Since the Defendants in this case profited very little, only minor statutory damages are necessary to deter both these defendants and others.").  Accordingly, the Court will set the dollar amount per violation at $2,000.  The amount per violation multiplied by the 4 counterfeited marks, 21 types of goods, and treble damages for willfulness, means the Court will award $504,000 in statutory damages.

## B.     Attorneys' Fees

Section 1117 lays out an integrated scheme for plaintiffs in trademark actions to recover damages and attorney's fees.  Under § 1117(a), a plaintiff that establishes a violation of any trademark right is entitled to actual damages and, in "exceptional cases," reasonable attorney's fees. 15 U.S.C. § 117(a).  A case is exceptional if "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 3154 (3d Cir. 2014).  Under § 1117(b), if a plaintiff is seeking actual damages under § 1117(a) for trademark infringement

---

[4]     New Bunren is owned and operated by a single individual who also works as a cashier at a retail store, and New Bunren used Legalzoom.com to prepare its trademark application. (D.I. 86 at 3, 19).

[5]     New Bunren had only two point of sale locations: (i) its own website, which did not include purchasing instructions, and (ii) the Chinese website Taobao.com, which requires use of a third-party intermediary to complete the transaction.  (D.I. 73 at 8; D.I. 86 at 10).

under § 1114, then the plaintiff is entitled to three times the actual damages "together with a reasonable attorney's fee" if two conditions are met: (i) the infringement involves "counterfeit marks," and (ii) there are no "extenuating circumstances."  15 U.S.C. § 117(b).  Finally, a plaintiff may eschew actual damages under § 1117(a) in favor of statutory damages under § 1117(c). Section 1117(c) itself makes no provision for attorney's fees.

The Court declines to award attorneys' fees under § 1117(a) or (b).  For subsection (a), New Bunren's positions were not wholly without merit, and it did not litigate the case in an unreasonable manner, so the case does not qualify as exceptional.  For subsection (b), the plain language of the statute suggests that attorneys' fees are not available unless New Balance is seeking actual damages, which it is not.[6]  Because New Balance did not address all of the requirements for an award of attorneys' fees under subsection (b), it has not shown that it is entitled to such fees.  (D.I. 85 at 18-19).

## II.   CONCLUSION

For the foregoing reasons, the Court will award $504,000 in statutory damages pursuant to 15 U.S.C. § 1117(c) and deny New Balance's request for attorneys' fees pursuant to 15 U.S.C. § 1117(a) or (b).

---

[6]   At least one appellate court has held that there is no statutory basis for awarding attorneys' fees under § 1117(b) if the plaintiff has elected statutory damages under § 1117(c).  *See K & N Engineering, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007).